1997 SD 136

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jaison E. BRACHT, Defendant and Appellant.**

**No. 20149.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 1997.

Decided Dec. 17, 1997.

Mark Barnett, Attorney General, Timothy Bartlett, Assistant Attorney General, Pierre, for plaintiff and appellee.

Paul G. Riley, Vermillion, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Jaison E. Bracht appeals his sentence for third offense driving while under the influence of alcohol (DUI). Because the prosecutor breached the plea agreement, we vacate the sentence contained in the judgment and remand for resentencing before a different judge as required by the United States Supreme Court.

## FACTS

[¶ 2.] Bracht was charged with third offense DUI. During arraignment, his defense counsel outlined the following plea bargain:

> May it please the Court, Paul Riley appearing with and on behalf of Jaison Bracht. Your Honor, this is the initial appearance on this case. The defendant requested a continuance and waived application of the [180] day rule while he completed inpatient alcohol treatment. That was initially done, and the state had indicated they would not object to him receiving credit for that before pronouncing—in pronouncing sentence. We have also agreed that the defendant will enter a plea of guilty to DUI third offense in exchange for dismissal of Count II [i.e., driving with a revoked license], *and the state agrees it will not resist [a] request for [a] suspended imposition of sentence.* We intend to request a pre-sentence report. (emphasis added).

The state's attorney registered no objection to this rendition of the plea bargain.

[¶ 3.] After the plea bargain was explained, the trial court advised Bracht of the charge, his rights, the presumption of innocence, the consequences of a guilty plea and the consequences of admitting his prior DUI convictions. Concerning the plea bargain, the trial court cautioned Bracht that:

> I want you to understand that any recommendation that may be given by your counsel or the state is merely a recommen-

dation. It doesn't bind the Court. That if we go through with this deal here and you enter your pleas and you're convicted of a Class 6 felony, I will order a pre-sentence report. And I'll consider, of course, the option of a suspended imposition of sentence, but I'll consider the other sentencing options that I have as well. I'll also listen to counsel. And we'll have sentencing on another date, and I'll make a determination as to what's appropriate under the circumstances of this case. Do you understand that?

Bracht said he understood the trial court's admonishment, entered a guilty plea to DUI and admitted the allegations of the Part II information for third offense DUI. The trial court accepted Bracht's plea and admission and ordered a pre-sentence investigation and report.

[¶ 4.] At sentencing, Bracht's counsel argued on Bracht's behalf for a suspended imposition of sentence. The state's attorney responded as follows:

Just a few comments, Your Honor. I can appreciate the fact that [Jaison] did have a very serious head injury back in 1993, and I can accept the fact that these behavioral changes that Mr. Riley's discussed can be or could be considered secondary to his lower functional capacity. And as much as I'm concerned about [Jaison] in that regard I'm even more concerned about the risk or the danger he imposes on the rest of us, on the other members of this community that drive because of his behavioral changes and because of his lower functional capacity, and because perhaps he's more susceptible to the influence of his friends and his peer group and his drinking buddies that get him into this kind of trouble. Since—Since this head trauma he's had a DWI arrest every single year.1994, 1995, 1996 and 1997. My goal is that there will not be another one in 1998. I think that even though perhaps we can accept the fact that Jaison is not doing this intentionally we need to get through to him in some meaningful way that you can't—you can't drive—You can't drive after you've been drinking. So I would ask the Court to impose a similar sentence. The same or similar—a sentence similar to what you would impose in other cases.

After the state's attorney's comments, Bracht's counsel pointed out that, as part of the plea bargain, the State agreed not to resist Bracht's request for a suspended imposition of sentence. The state's attorney answered stating, "[w]ell, I'm not going to argue against that or resist that request if that's what's been put on the record, but I would just leave the sentence in the Court's discretion." Thereupon, the trial court sentenced Bracht to two years in the penitentiary and revoked his driving privileges for eighteen months after his release. Bracht appeals.

### ISSUE

[¶ 5.] **Did the State breach the terms of Bracht's plea bargain?**

[¶ 6.] "When the government fails to fulfill a material term of a plea agreement, the defendant may seek specific performance or may seek to withdraw his plea." *U.S. v. Barresse,* 115 F.3d 610, 612 (8th Cir.1997). Bracht contends the State violated the terms of his plea bargain by resisting his request for a suspended imposition of sentence. Accordingly, he requests resentencing or the opportunity to withdraw his plea.

[¶ 7.] The principles governing the duties of prosecutors and the promises they make in negotiating guilty pleas were set forth in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *Santobello,* the defendant entered a guilty plea in exchange for the prosecutor's agreement to make no sentencing recommendation. During sentencing, however, a different prosecutor cited the defendant's criminal record and recommended the maximum one year sentence. Defense counsel objected on the basis of violation of the plea bargain. The sentencing judge stated he was not influenced by the prosecutor's comments and, referring to the defendant's criminal record and the need to protect society, sentenced the defendant to one year in a state correctional institution. The Supreme Court eventually granted certiorari in the case, vacated the judgment and remanded the case for reconsideration, holding:

[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

On this record, petitioner "bargained" and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. . . .

We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.

*Santobello,* 404 U.S. at 262—63, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

[¶ 8.] *Santobello* was followed by the Eighth Circuit Court of Appeals in *U.S. v. McCray,* 849 F.2d 304 (8th Cir.1988). As in *Santobello,* the defendant in *McCray* entered a guilty plea in exchange for the government's agreement not to make any sentencing recommendation. During sentencing, the trial court imposed a four year sentence. When the defendant requested that he be designated as eligible for early parole, the trial court sought the government's position. The prosecutor resisted the designation and requested that the sentence stand as given. The trial court then denied the defendant's request. The Eighth Circuit vacated the defendant's sentence and remanded for resentencing before another judge concluding that, "[w]hen the government breaches its promise to remain silent at sentencing, resentencing is required. The fact that the district court stated that the government's

remark did not influence its decision does not ameliorate the government's breach." *McCray,* 849 F.2d at 305 (citations omitted).

[¶ 9.] Attempting to avoid the dictates of *Santobello* and *McCray,* the State contends the prosecutor in the instant case did not violate the plea bargain because he did not "resist" Bracht's request for a suspended imposition of sentence and did not make a sentencing recommendation. This is an illusory assertion in light of the state's attorney's request for the usual sentence. Moreover, in *McCray,* the Eighth Circuit rejected a "hypertechnical distinction" based upon the precise language of the government's agreement in favor of a " 'straightforward interpretation' " of the government's promise. *See McCray,* 849 F.2d at 305 (quoting *United States v. Carbone,* 739 F.2d 45, 47 (2d Cir. 1984)). In this vein, the Eighth Circuit endorsed the dissent of District Judge Stern in *United States v. Miller,* 565 F.2d 1273, 1275–76 (3d Cir.1977) (Stern, Dist. J., dissenting):

In *United States v. Crusco,* 536 F.2d 21 (3rd Cir.1976), this Court construed a prosecutorial promise to "take no position as to sentence" to mean that the government had undertaken to refrain from *any* allocution at sentence, even one directed solely at correcting what were claimed to be factual misstatements to the Court by the defense. The majority, and in my view correctly, in summing up *Crusco* says, "We held that the Government's characterization of its remarks [as no recommendation of the terms of the sentence] was nothing more than a transparent effort to influence the severity of the defendant's sentence." [Ante 1275] As to *Miller,* however, the majority characterizes the government's remarks against mitigation for him as merely "rhetorical".

In *Crusco* the prosecutor did not recommend a specific term of years; he spoke only to contradict the mitigating factors urged by the defense. So too here. *I cannot construe the prosecutor's remarks here as rhetorical. He spoke at the moment of sentencing, with the intent to disparage a claim for mitigation made on behalf of one about to be sentenced, and to the very judge who would shortly pro-*

nounce that sentence. The government's rhetoric was not rhetorical. It was uttered to influence the sentence. It could have been uttered for no other purpose.

It is well to remember the full text of the words written by Judge Rosenn in *Crusco:*

... We see the Government's characterization as a transparent effort to influence the severity of Cimmino's sentence. Only a stubbornly literal mind would refuse to regard the Government's commentary as communicating a position on sentencing.

536 F.2d 21, 26 (1976). (emphasis added).

■■■ [¶ 10.] Here, as observed by Judge Stern in *Miller, supra,* the State's "rhetoric was not rhetorical." The prosecutor spoke at the moment of sentencing to the judge who would shortly pronounce sentence with the intent to disparage Bracht's claim for mitigation. Obviously, these remarks were voiced in opposition to granting a suspended imposition of sentence. They could have been uttered for no other purpose. On that basis, the State breached its plea agreement.

[¶ 11.] In *Santobello,* the Supreme Court outlined the following remedies for breach of a plea bargain:

The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, *in which case petitioner should be resentenced by a different judge,* or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

*Santobello,* 404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433 (footnote omitted)(emphasis added). In *United States v. Brody,* 808 F.2d 944, 948 (2d Cir.1986), the Second Circuit defined the remedy for breach of an agreement to take no position at sentencing as follows:

The nature of the remedy varies with the nature of the broken promise and the facts of each particular case. In *United States v. Corsentino,* 685 F.2d 48 (2d Cir.1982), we ordered resentencing in order to remedy a violation by a prosecutor who argued for a harsh sentence after he had agreed "to take no position at sentencing." *Id.* at 49—52. *Accord United States v. Carbone,* 739 F.2d 45, 46—47 (2d Cir.1984)(prosecutor, by arguing against split sentence, breached plea agreement to take no position at sentencing; resentencing required). We require resentencing where the violation of an agreement goes to the very "essence" of the plea agreement. *United States v. Stolon,* 561 F.Supp. 63, 64—66 (E.D.N.Y.1983). Indeed, the egregious nature of such a breach requires that we order the additional step of reassigning the proceedings to a different sentencing judge. *Corsentino,* 685 F.2d at 52. *See Carbone,* 739 F.2d at 47—48 (resentencing required despite fact that sentencing judge not influenced by government's argument for harsh sentence).

■■■ [¶ 12.] Based upon the foregoing, it is clear a prosecutor's broken promise to take no position at sentencing is a flagrant breach going to the essence of a plea bargain. The remedy is resentencing before a different sentencing judge. *Brody, supra. Accord McCray, supra. See also Brunelle v. U.S.,* 864 F.2d 64, 65 (8th Cir.1988)(when government breaches plea agreement with respect to a sentence recommendation, a substantive violation has occurred and, at the least, resentencing before a different judge is required).[1]

---

1. The dissents part company with this decision on the issue of resentencing by a different judge. Rather than following *Santobello, McCray* and their progeny, the dissents urge that we follow a line of cases based upon *United States v. Robin,* 553 F.2d 8 (2d Cir.1977) (*Robin II*) which outlines a three factor test for determining when further proceedings in a case should be conducted by a different judge. See, e.g., *United States v. Arnett,* 628 F.2d 1162 (9th Cir.1979); *United States v. Travis,* 735 F.2d 1129 (9th Cir.1984); *United States v. Wolff,* 127 F.3d 84 (D.C.Cir. 1997). We disagree with this approach. First, the Supreme Court said nothing in *Santobello*

[¶ 13.] Here, the prosecutor's breach of his promise not to resist Bracht's request for a suspended imposition of sentence is equally as flagrant as a breach of a promise to take no position at sentencing. Accordingly, we vacate Bracht's sentence and remand for resentencing before a different judge. However, we hasten to add the same qualification used by the Supreme Court and the Eighth Circuit in similar dispositions: "We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433. In order to restore him to the position he would have been in before the State's breach, Bracht must be sentenced by another judge. The new judge might well give the same sentence, but only after the State complies with its promise.

[¶ 14.] Having reached the foregoing conclusion, we find it unnecessary to address the balance of Bracht's appellate issues.

about a three factor test for determining when resentencing should be conducted by a different judge. Second, *Robin* was not a breach of plea bargain case and *Santobello* was not even discussed or cited in either of the *Robin* decisions. See *Robin II; United States v. Robin*, 545 F.2d 775 (2d Cir.1976) (*Robin I*). Therefore, despite acceptance by some of the U.S. Circuit Courts of Appeal, we fail to perceive how *Robin* is even applicable in a breach of plea bargain case clearly controlled by *Santobello*. Third, even the jurisdictions that have adopted the *Robin* methodology in breach of plea bargain cases have been inconsistent. For example, despite the precedents of *Arnett, supra* and *Travis, supra*, a Ninth Circuit panel recently declined to follow *Robin* and simply remanded a breach of plea bargain case to a different sentencing judge on the basis that, "the Supreme Court's decision in *Santobello*, of course, is controlling." *U.S. v. Camper*, 66 F.3d 229, 232 (9th Cir.1995)(emphasis added). See also *Wolff*, 127 F.3d at 87 (we have previously expressed the assumption that *Santobello* creates a general rule that when a plea agreement is breached, resentencing must automatically be assigned to a different judge). Fourth, there is a sound and logical rationale for *Santobello*'s requirement of resentencing by a different judge. As articulated by Judge Randolph in his special writing in *Wolff*, 127 F.3d at 89–90 (Randolph, J., concurring in part and dissenting in part):

If one took the judge at his word [that the prosecutor's recommendation played no role in his sentencing judgment], sending the case

[¶ 15.] Sentence vacated and case remanded for resentencing by a different judge.

[¶ 16.] SABERS, and AMUNDSON, JJ., concur.

[¶ 17.] MILLER, C.J., and GILBERTSON, J., concur in part and dissent in part.

MILLER, Chief Justice (concurring in part and dissenting in part).

[¶ 18.] I agree with the majority that *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), requires that this case be remanded for a sentencing hearing that complies with the original plea agreement. However, I dissent in part because I do not believe *Santobello* requires reassignment of the case to a different judge.

[¶ 19.] As the majority noted, the United States Supreme Court, in *Santobello*, stated:

The ultimate relief to which petitioner is entitled *we leave to the discretion of the state court*, which is in a better position to decide whether the circumstances of this

back to him for resentencing would have been senseless. And so the Supreme Court ordered any resentencing of *Santobello* to be done by a different judge. I suppose this avoided making the prosecutor's breach a clear harmless error and preserved the possibility that *Santobello* might receive some benefit from the prosecutor's promised silence.

We agree. Here, Judge Timm did nothing wrong; he appropriately exercised his discretion in sentencing, indicating he was disregarding the prosecutor's remarks. If this case were remanded to him for resentencing, he would be acting well within his discretion and consistent with his earlier remarks if he imposed the very same sentence. However, in order to create a consequence for a prosecutor's broken promise, *Santobello* requires resentencing before a different judge. The logic of the requirement is sound. A criminal defendant has a constitutional right to the enforcement of a plea bargain. *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Due process requires that a guilty plea be voluntary and knowing and if it is induced by broken promises, the plea cannot stand. *Id.* (citing, e.g., *Santobello*). *Santobello* outlines the remedies for a constitutional breach in this regard. We have an obligation to obey the law and to yield to superior authority. How can we legitimately refuse to follow direct precedent from the United States Supreme Court on a constitutional issue flowing from an identical set of facts?

case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner[.]

404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433 (emphasis added).

[¶ 20.] The language quoted above from *Santobello* "mandates nothing." *United States v. Wolff,* 127 F.3d 84, 87 (D.C.Cir. 1997). All that can really be said about the quoted language is that ultimate discretion is left with the state courts. The United States Supreme Court does not state that remand to a different judge is required in every case, and cites no constitutional authority for such a proposition.

[¶ 21.] It is a basic tenet of constitutional law that United States Supreme Court opinions are not binding on state courts absent a basis in the federal constitution. *Harris v. Rivera,* 454 U.S. 339, 344–45, 102 S.Ct. 460, 464, 70 L.Ed.2d 530, 535 (1981) (holding "Federal judges have no general supervisory power over state trial judges; they may not require the observance of any special procedures except when necessary to assure compliance with the dictates of the Federal Constitution"); *State v. Buendia,* 121 N.M. 408, 912 P.2d 284, 288 (N.M.Ct.App.1996) (holding that because a United States Supreme Court opinion did not derive from constitutional requirements, "the holding is not legally binding on the states") (citations omitted); *People v. Gillespie,* 136 Ill.2d 496, 145 Ill.Dec. 915, 918, 557 N.E.2d 894, 897 (1990) (stating that as a United States Supreme Court opinion "was not of constitutional magnitude," the state court was not bound to follow it) (citations omitted).

[¶ 22.] *Santobello* does not constitutionally mandate that the new hearing on remand be before a different judge, and it specifically leaves the ultimate decision to this Court. The majority asks how we can "legitimately refuse to follow direct precedent from the United States Supreme Court[?]" Three different federal circuit courts of appeal have apparently refused to follow such precedent. *See, e.g., Wolff,* 127 F.3d at 87; *United States*

*v. Travis,* 735 F.2d 1129, 1132 (9th Cir.1984); *United States v. Bowler,* 585 F.2d 851, 856 (7th Cir.1978).

[¶ 23.] I respectfully suggest that the majority creates an anomalous precedent by requiring remand to a different judge. How can it ignore the legions of cases where this Court has reversed and remanded to the same trial judge when that person himself or herself had committed prejudicial error; yet here, it requires reassignment based upon error committed solely by the prosecutor?

[¶ 24.] Accordingly, I dissent, and would remand this case back to the same judge.

GILBERTSON, Justice (concurring in part and dissenting in part).

[¶ 25.] The Court now has before it an important issue of which it took note in *State v. Weiker,* 366 N.W.2d 823, 829 (S.D.1985), but concluded that it need not address at that time. I agree with the majority that the misconduct of the prosecutor in the action was flagrant and that remand for a sentencing hearing which complies with the original plea agreement is necessary. However, I respectfully part company with the majority conclusion that the additional step of reassignment of the case to a different sentencing judge is required as a mandated constitutional remedy.

[¶ 26.] The majority opinion concludes that *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), requires a new judge to conduct the resentencing when a case is remanded after it has been found that the prosecutor has breached its duty of keeping to a plea agreement. It is not disputable that a remand for resentencing is one of two options required under *Santobello* after the prosecutor violates a plea agreement at sentencing. However, whether the same or different judge should conduct the resentencing is disputable. The crux of *Santobello* appears to lie in the requirement of *remand for resentencing* or allowing the defendant to withdraw his plea. The *Santobello* court fails to mandate, and cites no authority, constitutional or otherwise, for the purported proposition that a different judge is constitutionally required when a plea

agreement has been breached. *United States v. Wolff,* 127 F.3d 84, 87 (D.C.Cir. 1997).

[¶ 27.] The majority adopts its holding from a line of cases which interpret *Santobello* as automatically requiring a "different judge" to conduct resentencing.[2] However, a second line of cases do not interpret *Santobello* as requiring a different judge for resentencing without making some sort of further determination. "Where the government violates a plea agreement at sentencing, the usual remedy is a remand for resentencing (citation omitted). Remand to a different judge is not the usual remedy, it is one reserved for 'unusual circumstances.' " *United States v. Travis,* 735 F.2d 1129, 1132 (9th Cir.1984) (citing *United States v. Arnett,* 628 F.2d 1162, 1165 (9th Cir.1979) (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977))). *See also Wolff,* 127 F.3d at 88. *United States v. Sharp,* 941 F.2d 811 (9th Cir.1991) (remand for resentencing to same judge after defendant claims breach of plea agreement and court unable to find unusual circumstances which would require a different judge); *United States v. Bowler,* 585 F.2d 851, 856 (7th Cir.1978) (after acknowledging *Santobello,* court refused to remand to a different judge for resentencing after prosecutor breached plea agreement).

Therefore, unless *Santobello* constitutes such a binding precedent, no precedent requires us to command such a reassignment. We hold that *Santobello* does not. Rather than expressing a holding, the language quoted [in *Santobello* ] in its entirety mandates nothing. It merely sets forth the two options——specific performance or setting aside of the plea—available to the district judge. It then observes without accompanying reasoning that in the event of specific performance the petitioner in that case "should be sentenced by a different judge." That hardly amounts to the reasoned proclamation of a rule of general application.

*Wolff,* 127 F.3d at 87. The *Wolff* court agreed with the *Arnett* court which handled the remand for resentencing the same as any other remand "when error is found in district court proceedings." *Id.* at 88 (citation omitted).

[¶ 28.] The *Travis* court was faced with a situation similar to the one at present where the prosecutor breached his plea agreement by failing to "stand mute" during sentencing. The *Travis* court remanded the case to the same judge for resentencing after concluding there was no evidence of bias on the part of the trial judge and considering the following factors under *Robin, supra:*

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of [its] mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected,

(2) whether reassignment is advisable to preserve the appearance of justice, and

(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*See also Wolff,* 127 F.3d at 88 ("[w]e conclude that these factors are appropriate ones") .

[¶ 29.] I respectfully submit that a different judge would not be required in the case now before us after application of the *Robin* factors to the present facts.[3]

---

**2.** See *United States v. Carrero,* 77 F.3d 11 (1st Cir.1996); *United States v. Van Horn,* 976 F.2d 1180, 1184 (8th Cir.1992) ("[U]nder *Santobello,* the fact that the district court may not have been influenced by the government's comments is immaterial"); *United States v. Brody,* 808 F.2d 944, 948 (2dCir.1986) ("[T]he egregious nature of such a breach requires that we order the additional step of reassigning the proceedings to a different sentencing judge").

**3.** The majority concludes at n. 1 that it "fail[s] to perceive how *Robin* is even applicable" since *Robin* was not a breach of plea bargain case and

did not explicitly cite *Santobello.* Even though the *Robin* court did not specifically address a prosecutor's breach of plea bargain, the court did intend the factors to apply to a broad range of errors. Furthermore, the *Robin's* court did address the ability of the sentencing judge to fairly resentence the defendant in holding that remand to a different judge is not required in all cases. *Robin II,* 553 F.2d at 11.

The majority at n1 goes on to disagree with my analysis because *Santobello* does not cite the three *Robin* factors developed by the Second Circuit. In response, I would point out the *Rob-*

1. **Whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of [its] mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected?**

[¶ 30.] Here, the question is whether the trial court could reasonably be expected to have substantial difficulty in putting out of its mind the prosecution's improper comments. The trial court's commentary at sentencing supports the majority conclusion that the trial court did not rely on the prosecution's comments in fixing Bracht's sentence. After Bracht's counsel objected to the prosecutor's comments the trial court stated, "Well, independent of your thoughts, [Mr. Prosecutor], I was thinking along similar lines as I listened to counsel for Mr. Bracht." The trial court indicated what it did and did not rely upon in sentencing:

> The court relied on the pre-sentence report and the history and background provided therein of this particular defendant. And in particular, the court was impressed with the frequency of alcohol related driving offenses over the past several years and the appearance that the public would not be protected by anything short of a prison sentence. And I'm not sure what the plea agreement was in this case, whether the state's attorney was to support a request for a suspended imposition of sentence or for no penitentiary time, but *comments of the state were not the impetus of the court's sentence and I would lay no weight on the comments.*

(emphasis added).

[¶ 31.] The court in *United States v. Heubel*, 864 F.2d 1104 (3rd Cir.1989), did not expressly adopt the *Robin* test. The court stated that it felt it did not have to adopt the test because the defendant's arguments did not satisfy its requirements. *Id.* at 1112. However, the court found no need for requiring a new judge where the sentencing court impermissibly considered defendant's failure to waive his Fifth Amendment rights against self-incrimination in formulating his sentence. "It is no more difficult for a judge to discount an impermissible factor in sentencing than to ignore evidence at trial that was heard and excluded on proper objection." *Id.* (citation omitted).

[¶ 32.] Other courts have refused to remand to a different judge where the original judge made an error of law by considering an improper sentencing factor. *United States v. Chatlin*, 51 F.3d 869 (9th Cir.1995); *United States v. Donaghe*, 50 F.3d 608 (9th Cir. 1994). Thus, where a judge who has committed the original error can be expected to resentence a defendant fairly, even more so should a judge who did not commit an error.

[¶ 33.] It seems evident that since the trial court in this case was not influenced by the prosecutor's comments at the original sentencing, the trial court would not consider them upon resentencing.

2. **Whether reassignment is advisable to preserve the appearance of justice?**

[¶ 34.] The appearance of justice under the present facts is preserved by remanding to the original judge. The trial court did not rely on any improper factors or inadmissible evidence in sentencing Bracht. The trial court was influenced by, among other factors, the pre-sentence report which indicated that Bracht was receiving a new DUI at the rate of approximately one per year over the past three years. Therefore, assuming as we must, that the trial court will perform as required and consider the plea agreement, Bracht will not be prejudiced by remanding the case to the same judge. *See United*

---

*in* factors were not authored until six years after *Santobello* was decided.

Several jurisdictions have adopted the Robin test for a variety of reasons. *Wolff*, 127 F.3d at 88; *Arnett*, 628 F.2d at 1165; *Bembenista v. United States*, 866 F.2d 493 (D.C.Cir.1989); *United States v. White*, 846 F.2d 678, 698 (11th Cir. 1988); *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 832 (1st Cir.1987); *Simon v. City*

*of Clute, Texas*, 825 F.2d 940, 943–44 (5th Cir. 1987).

Application of the *Robin* test does not always result in remand to the original sentencing judge. In *Bercheny v. Johnson*, 633 F.2d 473, 476–77 (6th Cir.1980), after a review of the *Robin* factors, the *Bercheny* court determined it appropriate to remand to another judge.

States v. O'Brien, 18 F.3d 301, 304 (5th Cir. 1994) (remanding to same judge for resentencing and quoting *United States v. Denson*, 603 F.2d 1143, 1149 (5th Cir.1979) ("The district judge will, we are confident, perform his duty. It is unseemly for us to either assume that he will take particular course or to suggest what he should do so long as he reaches his decision in accordance with the controlling statute.")).

3. **Whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness?**

[¶ 35.] In considering the case now before this Court, a guilty plea, when analyzed in the context of this third factor, by itself, should not require a different judge. "[W]hile there is little duplication of effort involved in remanding to a different judge in the context of a guilty plea (as opposed to a lengthy trial), this criterion alone is not enough to overcome the other factors favoring remand to the original judge." *Heubel*, 864 F.2d at 1112 (citation omitted). The Ninth Circuit reaffirmed its reliance on the factors in *Robin* in *Arnett*, 628 F.2d at 1165. With regard to the third factor, the *Arnett* court stated:

> A new judge would have to learn about the defendant, his background, the plea bargain and the sentence.[4] In considering whether to reduce the sentence, the new judge could only guess what had led the first judge to impose the original sentence. As there is little appearance of unfairness here, the benefits, if any, of remand to a

different judge appear slight in comparison to the disadvantages.

*Id.* at 1166. "[T]here is reason to believe that reassignment would entail at least some waste and duplication, possibly out of proportion to whatever molecular gain there might be in preserving the appearance of fairness." *Wolff*, 127 F.3d at 89.

[¶ 36.] I would submit that the above cited rationale applies with equal force to the present facts.[5]

**Conclusion**

[¶ 37.] Since the inception of this Court, it has from time to time reversed a trial court for errors committed against a criminal defendant which were found to be prejudicial. Yet one must look long and hard to find a case where the remand was designated to be to another judge rather than the original trial court which committed the error. We have assumed that the trial court will correct its original error and not retaliate against the defendant who obtained the reversal from this Court. What then is the justification for continuing on with this procedure and yet automatically ordering a remand to another judge where the error was made by the prosecutor, not the trial court, and not even considered by the trial court?

[¶ 38.] The cases cited above hold that the defendant must show "unusual circumstances" or some other valid reason in order to require remand for resentencing by a different judge. *Sharp*, 941 F.2d at 817; *Heubel*, 864 F.2d at 1113. Bracht makes no claim of bias or reliance on impermissible factors by the trial court and the majority explicitly finds there is none. Therefore, Bracht has failed to demonstrate *any* circum-

---

4. South Dakota follows the same philosophy:
   > When determining a fitting sentence, the sentencing court should acquire a thorough acquaintance with the character and history of the man before it. This study should examine a defendant's general moral character, mentality, habits, social environment, tendencies, age, aversion to or inclination to commit crime, life, family, occupation, and previous criminal record.

   *State v. Chase in Winter*, 534 N.W.2d 350, 354–55 (S.D.1995) (citations omitted).

5. Recently in *Black v. Class*, 1997 SD 22, ¶ 29, 560 N.W.2d 544, 551–52, this Court had cause to

comment on the effect of improper prosecutorial conduct which results in having to undertake for a second time, proceedings which should have been completed correctly the first time:

> The defendant has been incarcerated since 1991 for a death which may or may not be found to be justifiable self-defense when all relevant facts are considered. Prosecutors and law enforcement will be required to again put forth substantial time to prepare for retrial as will the defense. The public is forced to underwrite the expense of a re-trial.

stances which require a different judge to conduct his resentencing.

[¶ 39.] The mandates of *Santobello* can still be fulfilled by allowing the same judge to resentence so long as there is no showing of bias, nor unusual circumstances justifying a different judge.[6] For the above reasons I respectfully dissent in part.

6. Although the conduct of the prosecutor, not the trial judge, is found by the majority to be "flagrant," there is no suggestion that the source of the problem, the prosecutor, rather than the trial judge, be replaced for a second sentencing hearing. SDCL 7–16–2 authorizes the appointment of an acting state's attorney where the state's attorney is "unable to attend to his duties or is adversely interested or disqualified...."

> Given the majority opinion, we will now have a remand to another judge and the same prosecutor for resentencing even though the prosecutor, not the original sentencing judge, was

the cause of the constitutional violation. Although the majority finds this to be "sound logic," it will be interesting to see what happens if the same prosecutor conducts himself in the same manner as the second sentencing hearing and the new sentencing court states it will ignore these improper remarks and proceeds to sentence the defendant. What then? Again impose the majority's "constitutional sanction" on the prosecutor by removing the second sentencing judge for the upcoming third sentencing with the same prosecutor?