2001 SD 125

**Charles World TURNER, Petitioner and Appellee,**

v.

**Douglas WEBER, Warden, South Dakota State Penitentiary, Respondent and Appellant.**

**No. 21876.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 2, 2001.

Decided Oct. 24, 2001.

588

Jerry L. Pollard of Kabeiseman & Pollard, Yankton, South Dakota, Attorneys for petitioner and appellee.

Mark Barnett, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Pierre, South Dakota, Attorneys for respondent and appellant.

PER CURIAM.

[¶ 1.] The State appeals an order granting Charles World Turner's petition for habeas corpus relief from his sentences for third offense driving while under the influence of alcohol (DUI) and attempted manslaughter and remanding his case to the trial court for resentencing. We reverse.

## FACTS

[¶ 2.] In May 1997, World Turner was arrested in Yankton, South Dakota for third offense DUI. In August, he was again arrested in Yankton after attacking the proprietor of a convenience store with a knife, cutting her and attempting to open her cash register. As a result of these arrests, charges were filed against World Turner for third offense DUI, attempted second degree murder, attempted first degree robbery and aggravated assault. World Turner was arraigned and pled not guilty. Plea bargaining ensued and World Turner was charged with the lesser offense of attempted first degree manslaughter.

[¶ 3.] World Turner's rearraignment was conducted on December 23, 1997. At that time, the State read the information and indictment charging him with third offense DUI and attempted manslaughter. The trial court then went forward and thoroughly explained the charges, the maximum penalties, World Turner's Constitutional rights and the rights waived with the entry of guilty pleas. At each step, World Turner indicated his understanding of the trial court's explanation. The trial court then called on World Turner to plead to the charges of third offense DUI and attempted manslaughter and World Turner pled guilty to both offenses. At that point, the trial court inquired as to whether there was a plea bargain and the state's attorney indicated an agreement

had been reached. He explained that agreement as follows:

MR. RIDGWAY: ... In return for Mr. World Turner's plea of guilty to Parts I and II of the DUI [Information] the state would be free to argue for whatever punishment would be appropriate, as would Mr. Hosmer [i.e., defense counsel]. On the plea of guilty to the Attempted Manslaughter the state would dismiss the prior Indictment dated September 8, 1997, charging Attempted Murder in the Second Degree, Attempted Robbery in the First Degree and Aggravated Assault. In addition, the state would recommend a 25 year sentence on the Attempted Manslaughter with five suspended, and that sentence will be served concurrently with the sentence that was imposed on the DUI 3rd.

THE COURT: Then is the defense free to argue for a lesser sentence?

MR. RIDGWAY: That's correct.

THE COURT: Mr. Hosmer, is that your understanding of the agreement?

MR. HOSMER: Yes, Your Honor, it is.

THE COURT: And, Mr. World Turner, is that your understanding of the agreement?

MR. WORLD TURNER: Yes.

THE COURT: Was there anything else that you thought was promised to you or agreed to by one of the attorneys here that they haven't told me about?

MR. WORLD TURNER: No.

[¶ 4.] Following this explanation, the trial court went forward to confirm with World Turner that he understood the rights he was waiving with his guilty pleas and to lay a factual basis for acceptance of the pleas. With the agreement of the parties, the trial court then proceeded to sentencing. In arguing in mitigation of the sentence, defense counsel made the first reference to World Turner's parole eligibility stating:

I would inform the court, and I'm sure the court is already aware, that whatever sentence is imposed in this case the defendant is going to have to serve at least fifty percent of that time. He is not eligible for any parole until he has served fifty percent of whatever the court imposes by way of a sentence. So that if the court adopts the recommendation of the state he's going to have to serve a minimum of 10 years.

After the state's attorney's response, the trial court sentenced World Turner to one year in the penitentiary for the DUI and to twenty-five years for attempted manslaughter. Five years of the manslaughter sentence were suspended and the trial court further ordered that the DUI and manslaughter sentences run concurrently. With regard to parole eligibility, the trial court then made the following pertinent comment: "My records here indicate just what Mr. Hosmer indicated that on a violent offense that you have to serve 50 percent of your sentence which would mean that it would be 10 years before you would be eligible for parole on that." The proceedings were then concluded.

[¶ 5.] In September 1998, World Turner filed a pro se petition for a writ of habeas corpus alleging ineffective assistance of counsel and failure to follow the plea bargain. In his petition, World Turner alleged that a substantial part of the inducement for his entry into the plea bargain was that he would be eligible for parole in ten years. Instead, when he arrived at the penitentiary, he learned that he would not be eligible for parole for thirteen years. Counsel was appointed to represent World Turner for the habeas corpus proceedings and, for various reasons, he changed counsel on several occasions. In November 1999, one of his attor-

neys filed an amended petition for habeas corpus relief again alleging ineffective assistance of counsel and failure to follow the plea bargain and also alleging a due process violation in the trial court's incorrect statement of his parole eligibility date.

[¶ 6.] A habeas corpus hearing was held in August 2000. After the hearing, the habeas court entered findings of fact and conclusions of law determining that World Turner was deprived of effective of assistance of counsel due to the misinformation concerning his parole eligibility. The court further determined that the plea agreement upon which World Turner relied was unfulfilled. Accordingly, the court found his pleas were not knowingly, intelligently or voluntarily entered and remanded the case to the sentencing court for resentencing that would afford World Turner parole eligibility in ten years. The State appeals.

## ISSUE

[¶ 7.] **Did the habeas court err in granting World Turner habeas corpus relief?**

[¶ 8.] On appeal, the State argues the habeas court erred in granting World Turner relief because there was no breach of the plea agreement; there was no ineffective assistance of counsel in misinforming World Turner of his parole eligibility date [1]; and, there was no involuntariness in World Turner's pleas as a result of the misinformation concerning parole eligibility. These arguments will be addressed in the order in which they are raised.

1. There is no dispute that under the statute controlling calculation of parole eligibility, *i.e.,* SDCL 24–15A–32, World Turner was misinformed as to his parole eligibility date by both his own counsel and the trial court. Thus, it is undisputed that, despite the information provided to World Turner, his first parole eligibility is thirteen years from the date of sentencing rather than the ten years

## Breach of the Plea Agreement

██ [¶ 9.] In support of his argument before the habeas court concerning breach of the plea agreement, World Turner relied upon *State v. Bracht,* 1997 SD 136, 573 N.W.2d 176 (SD 1997) and *Bracht* provided a substantial basis for the relief the court granted World Turner. In *Bracht,* the defendant entered into a plea bargain for his guilty plea to third offense DUI. In outlining the terms of the plea bargain at the arraignment, defense counsel specifically stated that the State had agreed not to resist a request for a suspended imposition of sentence. The state's attorney registered no objection to that term of the plea bargain, yet, at sentencing, strenuously argued with the obvious intent to disparage the request. This Court held that the argument was a clear breach of the plea agreement and remanded the case for resentencing by a different judge. In reaching our decision, we specifically noted the U.S. Supreme Court's holding in *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 that, "[W]hen a plea rests in any *significant degree* on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (emphasis added).

[¶ 10.] Here, in contrast with *Bracht,* the plea did not rest in any degree, let alone a "significant degree," on a promise concerning parole eligibility.[2] A review of the above facts makes clear that parole

mentioned by his defense counsel and the trial court.

2. In fact, parole eligibility is not something within the power of the prosecutor to promise. It is a statutorily controlled consequence of the sentence imposed. *See* SDCL 24–15A–32. Nothing any prosecutor may say can control it.

eligibility did not even come up until defense counsel's argument in mitigation of punishment *after* the plea bargain was explained and *after* World Turner had already entered his pleas. Absolutely nothing about parole eligibility was mentioned in the State's Attorney's explanation of the plea agreement and defense counsel made no comment in response. World Turner himself was asked if there was anything else he thought was promised to him for his pleas and he responded "No." Thus, by his own words, World Turner is foreclosed from now claiming that parole eligibility played a significant part in inducing his guilty pleas and the trial court clearly erred in determining otherwise. *See Ramos v. Weber*, 2000 SD 111, ¶ 4, 616 N.W.2d 88, 90 (habeas court's factual findings reviewed under clearly erroneous standard).

[¶ 11.] Since World Turner's pleas rested in no "significant degree" on promises or agreements concerning parole eligibility, no breach of the plea bargain is established on that foundation. The habeas court erred in concluding otherwise.

### Ineffective Assistance of Counsel

[¶ 12.] The standards of review for claims of ineffective assistance of counsel were reiterated by this Court in *Ramos*, 2000 SD 111 at ¶ 12, 616 N.W.2d at 92–93:

> We follow the test for ineffective assistance of counsel prescribed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *See Jones v. State*, 353 N.W.2d 781, 784–86 (S.D.1984). In *Strickland*, the United States Supreme Court stated:
>
>> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.
>
> 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The question whether trial counsel was ineffective is a legal question, reviewable de novo. We presume the competence of counsel, and habeas applicants must overcome that presumption. Applicants must prove that the outcome was prejudiced by inferior performance of counsel. Prejudice means "a reasonable probability that, but for the unprofessional errors of counsel, the result of the proceeding would have been different." A "reasonable probability" is said to exist when there is proof sufficient to "undermine confidence in the outcome." We are not required to decide whether counsel's performance was sufficient before looking at whether the applicant was prejudiced by "alleged deficiencies." *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (some citations omitted).

In addition to these standards, it must be remembered that World Turner's convic-

tions were obtained as a result of guilty pleas. In guilty plea cases, the "prejudice" inquiry focuses on whether the alleged error of counsel caused the defendant to plead guilty rather than go to trial. *See Lien v. Class,* 1998 SD 7, ¶ 15, 574 N.W.2d 601, 607.

[¶ 13.] Here, there appears to be little dispute that the performance of World Turner's counsel at the plea proceedings was deficient for his failure to accurately advise World Turner of his parole eligibility date. Even the State concedes that, "it is difficult to imagine a strategy that would be promoted by improperly informing petitioner of parole eligibility." However, the habeas court's findings and conclusions reflect little consideration of the prejudice prong of the test for ineffective assistance of counsel. Indeed, World Turner fails in any attempt to establish prejudice because the plea bargain explained during the plea proceedings fails to reflect that parole eligibility played any role whatsoever in securing World Turner's pleas. Doubtless it was the dismissal of the other more serious charges that played the decisive role in inducing his guilty pleas. Even World Turner himself did not deny this at his habeas hearing. When specifically asked by the habeas court if he would have taken the plea bargain had it been for anything different or if it had required "more time," World Turner answered, "[i]f the plea bargain was over—I don't know. If it was over—that's the lowest they were going to go. So that's why I jumped on it."

[¶ 14.] World Turner can claim no better version of the facts than he himself has testified to. *See State v. Frey,* 440 N.W.2d 721, 727 (S.D.1989)(defendant not entitled to any better version of the facts than he himself testifies to). By his own statement, it is clear World Turner was not only anxious to take the State's lowest plea offer, but that he "jumped on it." Thus, he has in no way established prejudice resulting from his counsel's failure to accurately advise him of his parole eligibility date during the plea proceedings. It follows that the habeas court erred in finding ineffective assistance of counsel in this case.

### Voluntariness of Plea

[¶ 15.] This Court recently reviewed the voluntariness of a guilty plea in *State v. Nikolaev,* 2000 SD 142, ¶ 9, 619 N.W.2d 244, 246, and summarized the applicable principles as follows:

> As a matter of federal constitutional law, '[a] plea of guilty cannot stand unless the record in some way indicates a free and intelligent waiver by the defendant of his constitutional right to confront and cross-examine witnesses against him, his constitutional right to trial by jury, and his constitutional privilege against self-incrimination.' In addition to waivers of these three '*Boykin* rights' the record must disclose, as a matter of South Dakota law, that the defendant understood the nature and consequences of his plea. (quoting *State v. Robinson,* 469 N.W.2d 376, 378 (S.D.1991)).

With regard to advice as to the consequences of a plea, this Court has held that, "a court must address a defendant personally in open court, inform him of and determine that he understands' . . . the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law[.]' " *State v. Timperley,* 1999 SD 75, ¶ 12, 599 N.W.2d 866, 868 (quoting SDCL 23A–7–4(1)). However, this Court has also held that " 'it is not necessary for a court to inform a defendant of the collateral consequences of a guilty plea[.]' " *Id.* (quoting *State v. Wika,* 464 N.W.2d 630 (S.D.1991)). This includes advice concerning "eligibility for parole."

*Gregory v. State,* 353 N.W.2d 777, 781 (S.D.1984).[3]

■ [¶ 16.] Here, prior to accepting World Turner's pleas, the trial court thoroughly advised him of his right to confront and cross-examine the witnesses against him at a trial; his right to a speedy public trial by jury in Yankton County where the offenses were alleged to have been committed; and, his privilege against self-incrimination and right to remain silent. The trial court further advised World Turner that guilty pleas would waive these rights. The trial court also advised World Turner of the maximum possible penalties for third offense DUI and attempted first degree manslaughter and that the sentences could be ordered to run consecutively rather than concurrently. At every step, World Turner indicated he understood his rights, the possible penalties and the rights he would waive by pleading guilty. As concluded in *Nikolaev,* 2000 SD 142 at ¶ 12, 619 N.W.2d at 247, "[t]his is all that is required." Accordingly, the habeas court erred in finding World Turner's guilty pleas were not entered voluntarily.

[¶ 17.] Based upon the foregoing, the order granting habeas corpus relief to World Turner is reversed.

[¶ 18.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, KONENKAMP, Justices, and GORS, Circuit Judge, Acting Supreme Court Justice, participating.

---

**3.** The State acknowledges the court's statutory obligation under SDCL 23A–27–48 to inform a defendant pleading guilty of "the estimated minimum period the defendant must serve before being eligible for parole." However, as the State points out, this has nothing to do with insuring the voluntariness of a plea. No authority is provided by World Turner to establish that advice concerning a parole eligibility date is a requirement for entry of a voluntary plea. In fact, the holding in *Gregory, supra,* concerning advice as to the collateral consequences of a plea appears to rebut that contention.