#23972-rev & rem-RWS

**2006 SD 102**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

RYAN LEE VANDEN HOEK,                               Petitioner and Appellant,

  v.

DOUGLAS WEBER, Warden of
the South Dakota State
Penitentiary,                                       Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RONALD K. MILLER
Judge

\* \* \* \*

MIKE C. FINK
Bjorkman & Fink
Bridgewater, South Dakota                    Attorney for petitioner
                                             and appellant.

LAWRENCE E. LONG
Attorney General

DANIEL J. TODD
Assistant Attorney General
Department of Social Services Legal Services
Pierre, South Dakota                         Attorneys for respondent
                                             and appellee.


\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2006

OPINION FILED **11/21/06**

#23972

SABERS, Justice

[¶1.] Ryan Lee Vanden Hoek (Vanden Hoek) pleaded guilty to one count of kidnapping and one count of rape. He received 90 years for the kidnapping charge with 30 years suspended and 25 years for the rape charge, to be served concurrently. On appeal, he raises two issues. We reverse the sentence and remand for resentencing.

**FACTS**

[¶2.] In July of 1998, sixteen-year-old Vanden Hoek raped a female employee of the "Readers Den" in Mitchell, South Dakota. He used a knife to force the young woman into a back room of the store where he compelled her to commit various sexual acts. After being apprehended, he was indicted as an adult with two counts of attempted rape, three counts of rape, and one count of kidnapping.

[¶3.] Vanden Hoek made a motion to transfer the case to juvenile court. In preparation for the transfer hearing, the court ordered him to undergo a psychiatric evaluation at the Human Services Center (HSC) in Yankton, South Dakota. The HSC psychiatric evaluation indicated Vanden Hoek was not an ideal candidate for transfer, that rehabilitation would likely be frustrated, and "denying [him] access to victims would be far more effective in preventing damage to the population." Vanden Hoek's trial counsel did not obtain an independent psychiatric evaluation, nor did Vanden Hoek see the HSC report. After the HSC report, the transfer motion was withdrawn and Vanden Hoek decided to seek a plea agreement.

[¶4.] Vanden Hoek, his trial counsel and Assistant Attorney General Ronald D. Campbell (Campbell) entered into a written plea agreement. The terms of the

-1-

agreement specified Vanden Hoek would plead guilty to kidnapping and second degree rape.  In exchange for his guilty plea to these two charges, the State promised to dismiss the remaining counts on the indictment and to recommend sentences of 50 years for the kidnapping and 25 years for the rape, with the sentences to run concurrently.  While the State was required to recommend this sentence, Vanden Hoek could argue for any appropriate sentence.

[¶5.]      Prior to the sentencing hearing, a pre-sentence report (PSR) was compiled.  This PSR contained a letter from the victim's parents requesting Vanden Hoek receive a life sentence and the HSC psychiatric evaluation.  The PSR also contained information on Vanden Hoek's prior record and personal history.  Vanden Hoek did not see the PSR prior to sentencing.

[¶6.]      At the beginning of the sentencing hearing, Assistant Attorney General Anthony M. Sanchez (Sanchez)[1] filed the written plea agreement with the court.  However, during the State's argument Sanchez never recommended the agreed upon term of years.  Instead, Sanchez read from the victim's statement, which argued society should be protected from Vanden Hoek and he should "live with the consequences for the rest of his life. . . ."  Sanchez also referred to Vanden Hoek as a sociopath, and the boogie man who is "our community's worst nightmare" and "we need to banish him from all our dreams."  Vanden Hoek's trial counsel did not object to Sanchez's sentencing argument, or his failure to recommend the agreed upon term of years.  Vanden Hoek was sentenced to 90 years for kidnapping with 30

---

1.     Sanchez replaced Campbell as the prosecutor in this case when Campbell left the Attorney General's office.

years suspended and 25 years for the rape to run concurrent with the kidnapping sentence.

[¶7.] Vanden Hoek's trial counsel did not directly appeal his sentence. Instead, Vanden Hoek obtained a new habeas counsel and filed a petition for writ of habeas corpus on November 20, 2000. A provisional writ of habeas corpus was issued by the court on July 10, 2001. After extensive discovery was conducted, a hearing on the amended petition for writ of habeas corpus was held on July 8, 2005. Vanden Hoek's amended petition for writ of habeas corpus and the motion for issuance of certificate of probable cause were denied. This Court issued a certificate of probable cause and Vanden Hoek raised two issues. He argues: 1) the State breached its duty to recommend a specific term of years and violated the written plea agreement; and 2) Vanden Hoek's trial counsel was ineffective and deprived him of his Sixth Amendment right to effective assistance of counsel.

## STANDARD OF REVIEW

[¶8.] "Our standard of review for a habeas appeal is well established." Crutchfield v. Weber, 2005 SD 62, ¶8, 697 NW2d 756 (quoting Jackson v. Weber, 2001 SD 136, ¶9, 637 NW2d 19, 22) (additional citations omitted). Our review of habeas corpus proceedings is limited because it "is a collateral attack on a final judgment." *Id.* The review is limited to jurisdictional errors. Boyles v. Weber, 2004 SD 31, ¶6, 677 NW2d 531, 536 (citing Hays v. Weber, 2002 SD 59, ¶11, 645 NW2d 591, 595). In criminal cases, a violation of the defendant's constitutional rights constitutes a jurisdictional error. *Id.* The defendant has the burden of proving he is

entitled to relief by a preponderance of the evidence. *Id.* (citing Siers v. Class, 1998 SD 77, ¶10, 581 NW2d 491, 494) (additional citations omitted).

[¶9.] The findings of fact shall not be disturbed unless they are clearly erroneous. *Id.* A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Id.* ¶7 (citing *Hays*, 2002 SD 59, ¶11, 645 NW2d at 595) (additional citations omitted). The habeas court's conclusions of law are reviewed de novo. *See id.* (noting this court "may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel").

[¶10.] We examine the breach of the plea agreement issue as it is determinative.

[¶11.] **1. Whether the habeas corpus trial court erred when it concluded that the State did not breach the written plea agreement at sentencing.**

[¶12.] "Generally, plea agreements are contractual in nature and are governed by ordinary contract principles." State v. Waldner, 2005 SD 11, ¶8, 692 NW2d 187, 190 (quoting State v. Stevenson, 2002 SD 120, ¶9, 652 NW2d 735, 738). When the State breaches a plea agreement, "the defendant may seek specific performance or may seek to withdraw his plea." *Id.* (quoting State v. Bracht, 1997 SD 136, ¶6, 573 NW2d 176, 178). Vanden Hoek argues that the State breached the written plea agreement by not specifically recommending the agreed upon term of years. The State disagrees and claims the agreement was fulfilled when the written plea agreement was filed with the trial court and the court was made aware of the agreement.

[¶13.]    The contractual duties a prosecutor acquires when entering into plea agreements were set forth in *Santobello v. New York.* 404 US 257, 92 SCt 495, 30 LEd2d 427 (1971).[2]  In *Santobello,* the United States Supreme Court stated, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 SCt at 499.  The breach is not dependent on whether the sentencing judge would have been influenced by the breached term of the plea agreement. *Id.*  Instead, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case . . . for further consideration." *Id.* at 262-63, 92 SCt at 499.

[¶14.]    "Like all contracts, [plea agreements] include[] an implied obligation of good faith and fair dealing." United States v. Jones, 58 F3d 688, 692 (DCCir 1995) (citing Restatement (Second) of Contracts § 205 (1981)). *See also* United States v. Sparks, 20 F3d 476, 479 (DCCir 1994) (noting a prosecutor's nonperformance of a plea agreement may be reviewed for bad faith); United States v. Crawford, 20 F3d 933, 935 (8thCir 1994) (noting whether "the behavior of a party failing to perform . . . comports with the standards of good faith and fair dealing" is an inquiry when deciding if a material breach occurred).  Furthermore, a breach of a plea agreement implicates due process concerns.  "[O]nce an accused agrees to plead guilty in

---

2.    This Court used *Santobello's* rationale recently to vacate the sentences in *Bracht,* 1997 SD 136, ¶7, 573 NW2d at 179, and *Waldner,* 2005 SD 11, ¶9, 692 NW2d at 190.

reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain." *Waldner*, 2005 SD 11, ¶13, 692 NW2d at 191-92 (citing State v. Williams, 249 Wis2d 492, 637 NW2d 733, 744 (2002)) (internal quotations omitted).

[¶15.] The determinative inquiry in this case is, did Sanchez breach the terms of the written plea agreement by not specifically recommending the agreed upon term of years during his sentencing argument? If failing to verbalize the terms of the plea agreement, while arguing the terrible nature of Vanden Hoek's crimes is a breach, then Vanden Hoek would be entitled to relief. A look at prior South Dakota cases regarding a plea agreement breach is helpful in this analysis.

[¶16.] In *Bracht*, the State agreed not to resist Bracht's request for a suspended imposition of sentence and the plea agreement was explained to the trial court. 1997 SD 136, ¶¶2-3, 692 NW2d at 177. During sentencing, Bracht argued for a suspended imposition, but the State requested the court impose, "[t]he same or similar – a sentence similar to what you would impose in other cases." *Id.* ¶4. After Bracht pointed out the State agreed not to resist the suspended imposition request, the State responded, "[w]ell, I'm not going to argue against that or resist that request if that's what's been put on the record, but I would just leave the sentence in the [c]ourt's discretion." *Id.* (first alteration in original). We held the State breached the plea agreement and remanded for resentencing since the State did not fulfill its promise. *Id.* ¶13.

[¶17.] Likewise, in *Waldner*, we vacated and remanded for resentencing due to the prosecution's failure to recommend concurrent sentences. 2005 SD 11, ¶15,

692 NW2d at 193. In that case, the State and Waldner entered into a written plea agreement in which a guilty plea was exchanged for the State's agreement, among other things, to recommend concurrent sentences. *Id.* ¶3. This agreement was filed with the sentencing court. *Id.* ¶2. The State failed to recommend concurrent sentences and instead, "argued the 'atrocious' nature of the[ ] crimes . . . ." *Id.* ¶4.

[¶18.] In *Waldner*, we stated, "the terms of the plea agreement created an affirmative obligation for the State's Attorney to recommend to the trial court that the sentences . . . run concurrently. . . ." *Id.* ¶10. The State did not meet this obligation when it failed to specifically request concurrent sentences.

[¶19.] In this case, the State did not mention the terms of the plea agreement during the sentencing argument. Instead, Sanchez argued that Vanden Hoek was the "boogie man," the "community's worst nightmare" and the court should "banish [Vanden Hoek] from all our dreams." He also read from the victim's letter, which encouraged such a sentence that Vanden Hoek would have to "live with the consequences for the rest of his life. . . ."

[¶20.] Sanchez's argument did not fulfill the State's affirmative obligation to recommend the terms of the plea agreement. In fact, it is clear from the record that Sanchez was never going to mention the terms of the plea agreement during his argument. In his deposition, he testified the 50-year sentence under the terms of the plea agreement was "too lenient."[3] Furthermore, it was his philosophy not to

---

3.   An excerpt from Sanchez's deposition is as follows:
        Q: Is it fair to say, Mr. Sanchez, that you felt 50 years for Mr. Vanden Hoek was too lenient?
        A: That would be my opinion, yes.

mention a term of years in case the judge would give a number less than the terms of the plea agreement.[4]  Although Sanchez testified he did not act with the intention of getting more time than the plea agreement proposed, his actions still constituted a breach, since he failed to specify the term of years.  Even though "the breach . . . may have been inadvertent . . . , the defendant is still entitled to [relief]."  *Waldner*, 2005 SD 11, ¶13, 692 NW2d at 192 (quoting State v. Howard, 246 Wis2d 475, 630 NW2d 244, 51 (App 2001)).

[¶21.]    The State argues, and the habeas court agreed, that the terms of the plea agreement were fulfilled by making the judge aware of the plea agreement and filing the written agreement with the court.  However, our case precedent requires more.  The plea agreement in *Waldner* was filed and the court was aware of the agreement.  2005 SD 11, ¶2, 692 NW2d at 188.  Likewise, in *Bracht*, the court was aware of the plea agreement, 1997 SD 136, ¶¶2, 4, 573 NW2d at 177-78, but in both instances we reversed the defendant's sentences due to the prosecutions failure to perform his duties under the plea agreement.  *Waldner*, 2005 SD 11, ¶15, 692 NW2d at 193; *Bracht*, 1997 SD 136, ¶15, 573 NW2d at 181.

[¶22.]    Whether the court knew of the agreement or was affected by the breach "is of no legal significance."  *Waldner*, 2005 SD 11, ¶12, 692 NW2d at 191 (citing *Bracht*, 1997 SD 136, ¶7, 573 NW2d at 179).  The defendant waives

---

4.    Another excerpt from Sanchez's deposition:
      Q: Was it your policy in 1998 not to discuss numbers when you go in front of a judge for a sentencing hearing?
      A: Yeah, that – that's pretty much the way I like to operate.  I don't like to mention the numbers.

significant rights by entering into a plea agreement and that waiver is "not in exchange for the actual sentence or impact on the judge, but for the prosecutor's *statements* in court." *Id.* ¶12 (emphasis added). The inquiry is solely "whether the [State has] met [its] obligation." *Id.* If the statements "are not adequate the waiver is ineffective." *Id.* (quoting United States v. Clark, 55 F3d 9, 14 (1stCir 1995)).

[¶23.]     Looking at the government's promise in the plea agreement, Sanchez was required to recommend a specific term of years. Vanden Hoek waived important rights in exchange "for the prosecutor's statements in court." *Id.* This duty was not fulfilled by merely drawing the court's attention to the fact a plea agreement existed then turning around and impliedly arguing for a tougher sentence without mentioning the agreed term of years. Likewise, the State's duty to act in good faith when performing its obligations under the plea agreement was not fulfilled by arguing the nature of the crimes but not specifically mentioning the bargained for recommendation of 50 years. The State's "rhetoric was not rhetorical," and instead amounts to a "transparent effort to influence the severity of the defendant's sentence," without fulfilling its end of the bargain. *Bracht*, 1997 SD 136, ¶9, 573 NW2d at 179 (quoting United States v. Miller, 565 F2d 1273, 1276 (3dCir 1977) (Stern, District Judge, dissenting)).

[¶24.]     The State's failure to recommend a term of years during the sentencing hearing constitutes a breach of the plea agreement. This failure was a material breach of the agreement. The recommendation of a specific term of years was an important benefit Vanden Hoek relied upon when he entered into the plea agreement. "One of the most crucial issues in a plea agreement is the

recommendation concerning the length of time to be served on each count," so it certainly cannot be called immaterial. *Waldner*, 2005 SD 11, ¶11, 692 NW2d at 191 (citing *Howard*, 246 Wis2d at 489-90, 630 NW2d at 250-51).

[¶25.] When the State breaches the terms of a plea agreement, the proper remedy is remand for resentencing before a new judge.[5] "We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." *Id.* ¶14 (citing *Bracht*, 1997 SD 136, ¶12, 573 NW2d at 180) (quoting *Santobello*, 404 US at 263, 92 SCt at 499)). Therefore, Vanden Hoek's sentence is vacated and case remanded for resentencing by a different judge.

[¶26.] Based on our decision, it is unnecessary to address the ineffective assistance of counsel issue.

[¶27.] KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

[¶28.] GILBERTSON, Chief Justice, concurs in part and dissents in part.

GILBERTSON, Chief Justice (concurring in part and dissenting in part).

[¶29.] I agree that this case needs to be remanded for resentencing so that the defendant may receive the benefit of the plea agreement he entered into.

---

5. As noted in *Waldner*, "Since 1997 it has been the settled law in the State of South Dakota that the remedy for the breach of a plea agreement is resentencing before a different judge." 2005 SD 11, ¶14 n3, 692 NW2d at 192 n3 (citing *Bracht*, 1997 SD 136, ¶12, 573 NW2d at 180) (additional citations omitted).

[¶30.]     However, I respectfully dissent from this Court's direction that this case be remanded to a different circuit judge for that resentencing.  There are no facts which establish any bias or improper conduct on the part of the original sentencing court.  Moreover, based on the cases I cited in *State v. Waldner*, 2005 SD 11, ¶¶18-22, 692 NW2d 187, 193 (Gilbertson, C.J., concurring in part and dissenting in part), and *State v. Bracht*, 1997 SD 136, ¶¶37-38, 573 NW2d 176, 185 (Gilbertson, C.J., dissenting), I see no legal basis to do so.