#29423-a-SRJ
**2021 S.D. 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

LAURA GUZIAK,                             Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RACHEL R. RASMUSSEN
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

NOLAN WELKER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                              and appellee.


MANUEL J. DE CASTRO, JR.
Sioux Falls, South Dakota                 Attorney for defendant and
                                              appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 23, 2021
OPINION FILED **12/15/21**

#29423

JENSEN, Chief Justice

[¶1.] Laura Guziak entered into a plea agreement with the State after she was charged with multiple felony counts related to injuries her infant son sustained while he was in her care. She was also charged for possession of methamphetamine. The plea agreement provided that Guziak would plead guilty to two felonies and the State would recommend a suspended execution of sentence and cap its request for incarceration at 180 days in county jail. At sentencing, the circuit court imposed a penitentiary sentence. Guziak appeals, arguing that the State's comments at sentencing breached its implied obligation of good faith under the terms of the plea agreement. We affirm.

## Facts and Procedural History

[¶2.] On October 31, 2018, Guziak was arrested for possession of a controlled substance. After Guziak's arrest, her son, J.J., was taken to the Department of Social Services (DSS), where it was discovered that he was malnourished and had multiple injuries including bruises on his body, bone fractures, and a torn tongue. Guziak was initially charged with alternative counts of abuse or cruelty to a minor and alternative counts of aggravated assault. The State also filed a habitual offender information, alleging Guziak had been convicted of two prior felonies.

[¶3.] Guziak and the State entered into a plea agreement in which Guziak would plead guilty to one count of abuse or cruelty to a minor in exchange for the State's recommendation for a suspended execution of sentence. The State agreed it would cap its sentencing recommendation on the child abuse conviction to 180 days

in jail. Additionally, the parties agreed that Guziak would plead guilty to one count of possession of a controlled substance in exchange for the State's recommendation of a fully suspended sentence.

[¶4.]     At the plea hearing, the circuit court advised Guziak that the plea agreement was an agreement between her and the State, but it explained, "[I]f I deem it appropriate to do something other than the plea agreement, I would give you additional time to talk with [defense counsel] and withdraw your plea."[1] Guziak pleaded guilty to both counts, and the parties presented a factual basis to

---

1.     "[G]enerally circuit courts are not bound by plea agreements." *State v. Ledbetter*, 2018 S.D. 79, ¶ 19, 920 N.W.2d 760, 764 (citation omitted). "If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court . . . at the time the plea is offered." SDCL 23A-7-9. Once the plea agreement is disclosed, along with any comments from the victim, "the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." *Id.* If a court accepts a plea agreement with a provision as described in SDCL 23A-7-8(2), where the State agrees to cap its sentencing recommendation without binding the court, the court is not bound by the recommendations and is not obligated to give the defendant an opportunity to withdraw the plea if it decides to impose a sentence beyond the terms of the parties' recommendations. However, when a court accepts a plea agreement with an agreed upon sentence, as referenced in SDCL 23A-7-8(3), the court is agreeing to sentence "the defendant within the bounds of the plea agreement." *State v. Hale*, 2018 S.D. 9, ¶ 11, 907 N.W.2d 56, 60. If the court rejects a binding plea agreement after a guilty plea has been entered, the court must afford the defendant an opportunity to withdraw the plea. *See* SDCL 23A-7-11. Here, it was not clear from the State's rendition of the terms of the plea agreement, or from the circuit court's statements reiterating its understanding of the terms, whether the parties had intended the court to be bound by the parties' agreed upon sentencing recommendation. Rather than asking for a clarification, it is apparent that the circuit court treated the plea agreement as binding under SDCL 23A-7-8(3) and deferred its decision whether to accept or reject the sentencing terms in the plea agreement.

support the plea. The circuit court accepted Guziak's guilty pleas and ordered a presentencing investigation report (PSI).

[¶5.] Prior to the start of the sentencing hearing, the circuit court informed the parties that, after reviewing the presentence report, it would not "accept the plea agreement." The circuit court advised, "I do want the opportunity to either suspend or impose prison time based upon a number of factors that I reviewed and saw while going through the reports in preparation for sentencing." The court further informed Guziak, "Since I am rejecting the plea agreement in this case, Ms. Guziak does have an opportunity to withdraw her guilty plea and move forward with trial." The circuit court continued the sentencing hearing after Guziak requested a delay of sentencing to discuss her guilty pleas with counsel. Guziak appeared for sentencing one week later, affirmatively maintained her guilty pleas, and asked to proceed with sentencing.

[¶6.] At Guziak's sentencing hearing, defense counsel argued for a suspended sentence with no jail time. Defense counsel stated that Guziak had made positive improvements in her life, obtained employment, maintained sobriety for one year and eight months, and did not violate any of her bond conditions. Counsel also asserted that incarceration would negatively impact the progress that Guziak had made toward rebuilding her life.

[¶7.] The State began its sentencing argument by stating that "[t]he plea agreement does call for the suspended execution. That's what I'm arguing for here today." The State mentioned the plea agreement three other times throughout its argument. For example, the State told the court, "[W]e made the deal that we did

and I'll just leave it at that. I think there are a number of things that this Court - - handing down an incarceration sentence with a suspended execution is what we're asking for." Then the State observed that "[c]ertainly she has a history that is egregious and warranting a hefty sentence." The State continued to argue that "the facts are also egregious, and I think there's a punishment component that should also be handed down." The State further reiterated that it had "a very different impression of the things [Guziak's] done up until this point" and that it failed to see the steps backward that Guziak would take if she was incarcerated.

[¶8.]      During its argument, the State also highlighted aggravating circumstances, such as Guziak's decade-long struggle with drug use and her "long, long, long criminal history" that created a number of victims. The State argued that Guziak grossly minimized her responsibility for J.J.'s condition and the suffering she caused her infant child. The State noted J.J.'s injuries and the abuse that he suffered as a result of Guziak's conduct. The State asked the circuit court to consider that once J.J. was out of Guziak's custody, he became a "happy, excited little boy" and "did outstandingly well." Guziak did not object to the State's argument.[2]

[¶9.]      The circuit court sentenced Guziak to twelve years in the state penitentiary with eight years suspended on the child abuse conviction; and imposed a concurrent five-year sentence on the possession of a controlled substance conviction with the sentence fully suspended. Guziak appeals, raising one issue: whether the State's sentencing argument violated the plea agreement.

---

2.      Appellate counsel did not represent Guziak before the circuit court.

**Analysis and Decision**

**I.     Whether, under plain error review, the State breached the plea agreement resulting in prejudice to Guziak's substantial rights.**

[¶10.]     To preserve a claim for appeal that the prosecution breached the terms of a plea agreement, a defendant must make a timely objection at sentencing. *State v. Jones*, 2012 S.D. 7, ¶ 7, 810 N.W.2d 202, 205 (citing *Puckett v. United States*, 556 U.S. 129, 142–43, 129 S. Ct. 1423, 1433, 173 L. Ed. 2d 266 (2009)).  Here, Guziak did not raise any issue to the circuit court concerning the State's sentencing argument.  This Court reviews unpreserved issues for plain error.  *Jones*, 2012 S.D. 7, ¶ 8, 810 N.W.2d at 205 (citation omitted).  *See also State v. Olvera*, 2012 S.D. 84, ¶ 7, 824 N.W.2d 112, 114.  "To demonstrate plain error, [the appellant] must establish that there was: '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings.'" *Jones*, 2012 S.D. 7, ¶ 14, 810 N.W.2d at 206 (quoting *State v. Beck*, 2010 S.D. 52, ¶ 11, 785 N.W.2d 288, 293).  "We invoke our discretion under the plain error rule cautiously and only in 'exceptional circumstances.'" *Id.* (quoting *State v. Bowker*, 2008 S.D. 61, ¶ 46, 754 N.W.2d 56, 70).

[¶11.]     Guziak argues that the State breached its implied obligation of good faith under the plea agreement by arguing for a harsher sentence than the cap set forth in the agreement.  Guziak argues that the State's sentencing argument, taken as a whole, encouraged the circuit court to disregard the State's recommendation of

a suspended execution of sentence and impose a prison sentence. The State responds that it did not breach the plea agreement because its sentencing argument was brief, it asked for a suspended execution of sentence at least three times, and it did not ask the court to impose a period of incarceration beyond that provided for in the plea agreement.

[¶12.] We apply ordinary principles of contract law to determine whether the State breached a plea agreement. *State v. Slotsky*, 2016 S.D. 54, ¶ 5, 883 N.W.2d 738, 740. "We use a 'straight-forward interpretation' of the State's promise when examining whether a breach occurred." *Baldridge v. Weber*, 2008 S.D. 14, ¶ 30, 746 N.W.2d 12, 19 (internal quotation marks omitted) (quoting *State v. Bracht*, 1997 S.D. 136, ¶ 9, 573 N.W.2d 176, 179). Further, "[l]ike all contracts, plea agreements include an implied obligation of good faith and fair dealing." *Slotsky*, 2016 S.D. 54, ¶ 5, 883 N.W.2d at 740 (quoting *State v. Morrison*, 2008 S.D. 116, ¶ 5, 759 N.W.2d 118, 120).

[¶13.] Guziak does not claim that the State breached the express terms of the plea agreement. However, she contends that the State's sentencing argument constitutes a breach of the implied obligation of good faith under the plea agreement because "[t]he State's 'rhetoric was not rhetorical,' and instead [amounted] to a 'transparent effort to influence the severity of the defendant's sentence,' without fulfilling its end of the bargain." *Morrison*, 2008 S.D. 116, ¶ 11, 759 N.W.2d at 122 (quoting *Vanden Hoek v. Weber*, 2006 S.D. 102, ¶ 23, 724 N.W.2d 858, 864). "[O]nce an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment

of the bargain." *State v. Waldner*, 2005 S.D. 11, ¶ 13, 692 N.W.2d at 191 (quoting *Wisconsin v. Williams*, 637 N.W.2d 733, 744 (Wis. 2002)). The State must fulfill its obligations under the express terms of the plea agreement and its implied obligation of good faith. *See Morrison*, 2008 S.D. 116, ¶ 11, 759 N.W.2d at 121–22.

[¶14.] For example, in *Morrison*, we determined that the State had failed to meet its implied obligation of good faith during sentencing when it voiced its discomfort and remorse with a suspended imposition it had agreed to recommend as a part of the plea agreement. *Id.* *Morrison* held that such a breach occurred even though the State acknowledged the plea agreement several times during its comments at sentencing. *Id.* ¶¶ 3, 11, 759 N.W.2d at 119–20, 122. Similarly, in *Vanden Hoek*, this Court concluded that the State breached a plea agreement when the State merely drew attention to the existence of a plea agreement but then "turn[ed] around and impliedly argu[ed] for a tougher sentence without mentioning the agreed term of years." 2006 S.D. 102, ¶ 23, 724 N.W.2d at 864.

[¶15.] The State argues that it simply asked the court to impose the lengthy jail sentence that was included in the plea agreement.[3] We disagree. The State cannot fulfill its duty of good faith by merely mentioning the plea agreement when its rhetoric amounted to an impermissible effort to influence the circuit court to impose a harsher sentence.

---

3.   The circuit court credited Guziak for 96 days served in county jail. Thus, Guziak had already served more than half of the county jail sentence the State was limited to asking for under the plea agreement. The State's discussion of aggravating circumstances and its request for a "hefty sentence" and a sentence with a "punishment component" suggests that the State was asking the court to impose more than just the county jail sentence agreed to under the cap.

[¶16.] However, Guziak must show that any error created by the State's sentencing argument was plain. "An error is 'plain' when it is clear or obvious." *State v. McMillen*, 2019 S.D. 40, ¶ 23, 931 N.W.2d 725, 732 (citing *United States v. Roy*, 408 F.3d 484, 495 (8th Cir. 2005)). This requirement "means that lower court decisions that are questionable but not plainly wrong (at time of trial or at time of appeal) fall outside the Rule's scope." *Id.* (quoting *Henderson v. United States*, 568 U.S. 266, 278, 133 S. Ct. 1121, 1130, 185 L. Ed. 2d 85 (2013)). *See also United States v. Watson*, 843 F.3d 335, 337 (8th Cir. 2016) (cited by *McMillen* and holding an error cannot be plain when "neither the Supreme Court nor this [c]ourt" has "resolved the issue 'beyond debate'" (citation omitted)).

[¶17.] We have recognized that the State may breach its implied obligation of good faith under a plea agreement without breaching the express terms of the agreement, but an implied breach by its very nature does not always present the same degree of clarity in assessing error. As explained by the United States Supreme Court, "Not all breaches will be clear or obvious. Plea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt." *Puckett*, 556 U.S. at 143, 129 S. Ct. at 1433. Where, as here, the plea agreement left open an opportunity for the State to argue for a suspended sentence with a term of incarceration, and the State did not explicitly argue beyond that range, the State's sentencing argument was not a clear and obvious error.

[¶18.] Further, this Court's precedent does not support a determination that the State's sentencing argument amounted to a clear and obvious error. *See, e.g.*,

*Slotsky*, 2016 S.D. 54, ¶ 8, 883 N.W.2d at 741 (holding that the State materially and substantially breached a plea agreement when it did not recommend Hope Court and no jail time at sentencing as required by the agreement); *Jones*, 2012 S.D. 7, ¶ 15, 810 N.W.2d at 206 (finding a breach of the express terms, on plain error review, when the State failed to mention the plea agreement in its sentencing argument); *Vanden Hoek*, 2006 S.D. 102, ¶ 23, 724 N.W.2d at 864 (finding a material breach of the plea agreement and implied obligation of good faith when the prosecutor failed to state the agreed term of years for incarceration in its sentencing argument as required by the plea agreement and then argued the aggravating circumstances of the crime).

[¶19.]     Guziak argues that this case is indistinguishable from *Morrison* and that *Morrison* supports her claim that plain error occurred. *See* 2008 S.D. 116, 759 N.W.2d 118. However, *Morrison* did not involve plain error review because the defense counsel timely objected to the State's sentencing argument. *See id.* ¶¶ 3, 5–6, 759 N.W.2d at 119-21. In *Morrison*, the plea agreement provided that the State would not object to the defendant's request for a suspended imposition of sentence and the State would recommend that the defendant serve 180 days in the penitentiary. *Id.* ¶ 2, 759 N.W.2d at 119. At the sentencing hearing, the state's attorney described the case as "disturbing" and stated that "[t]he more disturbing to me than any part of it was I agreed . . . that I'd recommend suspended imposition of sentence." *Id.* ¶ 3. He continued by stating that the State was not backing out of the deal but further stated that "[i]f I would have thought that was going to happen that way, I'm not sure I would have even agreed to recommend." *Id.* The state's

attorney also highlighted the fact that the court was not bound to accept his recommendation in the plea agreement. *Id.* On de novo review, we held that the state's attorney violated the plea agreement, even though it did not explicitly renege the agreement, by impliedly arguing for a tougher sentence when it voiced its discomfort with the plea agreement. *Id.* ¶ 11, 759 N.W.2d at 121–22.

[¶20.] In contrast, here the State began its argument by outlining the express terms of the plea agreement and specifically stated, "That's what I'm arguing for here today." The State also drew attention to the plea agreement several times during its argument. More importantly, the State did not express that it was "disturbed" it had made the plea agreement and did not convey remorse for agreeing to the terms of the plea agreement as the state's attorney had in *Morrison*. The record before us does not establish that the State's argument was a clear and obvious violation of the plea agreement. Therefore, Guziak has failed to establish an error that was plain.

[¶21.] Guziak's claim also fails on the third prong of plain error. Plain error review requires Guziak to establish prejudice. *See Olvera*, 2012 S.D. 84, ¶ 13, 824 N.W.2d at 115 (explaining that a breach of the plea agreement implicates the defendant's substantial rights but does not automatically establish prejudice). To prevail on the prejudice prong, Guziak must show that the error "affected the outcome of the proceedings[.]" *Jones*, 2012 S.D. 7, ¶ 17, 810 N.W.2d at 206. *See also United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778, 123 L. Ed. 2d 508 (1993). "'Prejudice' in the context of plain error requires a showing of a 'reasonable probability' that, but for the error, the result of the proceeding would

have been different." *State v. Babcock*, 2020 S.D. 71, ¶ 45, 952 N.W.2d 750, 763 (quoting *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 33, 785 N.W.2d 272, 283).

[¶22.] Guziak relies on *Vanden Hoek* and *Morrison* to assert that she is entitled to a remedy for the breach without showing prejudice. Importantly, neither *Vanden Hoek* or *Morrison* involved plain error review. In *Morrison*, we held in the context of preserved error that a defendant "is generally entitled to the enforcement of a plea agreement without a showing of tangible harm resulting from that breach." *Morrison*, 2008 S.D. 116, ¶ 12, 759 N.W.2d at 122 (quoting *Baldridge*, 2008 S.D. 14, ¶ 34, 746 N.W.2d at 20). However, this Court clarified in both *Jones* and *Olvera* that on plain error review a defendant must prove prejudice. *See Jones*, 2012 S.D. 7, ¶ 16, 810 N.W.2d at 206; *Olvera*, 2012 S.D. 84, ¶ 13, 824 N.W.2d at 115. Without the additional showing of prejudice, "the error does not 'affect substantial rights' under the third prong of plain error review and '[an appellate court] ha[s] no authority to correct it.'" *Jones*, 2012 S.D. 7, ¶ 17, 810 N.W.2d at 206 (quoting *Olano*, 507 U.S. at 741, 113 S. Ct. at 1781).

[¶23.] In *Olvera*, this Court distinguished *Morrison* and applied plain error review to analyze whether the State's alleged breach of the plea agreement prejudiced the defendant. *Olvera* assumed, without deciding, that the State's argument arose to plain error. 2012 S.D. 84, ¶ 12, 824 N.W.2d at 115. This Court rejected the defendant's request for a reversal and remand for resentencing because neither the defendant, nor the record, showed that he was prejudiced by the alleged breach. *Id.* ¶ 14, 824 N.W.2d at 116.

[¶24.]	We acknowledge the due process concerns attached to the plea-bargaining process. However, the *Puckett* Court explicitly rejected classifying this error as "a special category of forfeited errors that can be corrected regardless of their effect on the outcome." 556 U.S. at 140, 129 S. Ct. at 1432 (quoting *Olano*, 507 U.S. at 735, 113 S. Ct. at 1778). We decline to treat breach of plea agreement errors differently under plain error review because

> [a] plea breach does not necessarily render a criminal trial
> fundamentally unfair or an unreliable vehicle for determining
> guilt or innocence[;] it does not defy analysis by harmless-error
> standards by affecting the entire adjudicatory framework[;] and
> the difficulty of assessing the effect of the error is no greater
> with respect to plea breaches at sentencing than with respect to
> other procedural errors at sentencing, which are routinely
> subject to harmlessness review.

*Id.* (internal citations and quotation marks omitted). Accordingly, we must adhere to our well-established plain error rule that an appellate court does not have the authority to correct an error resulting from a breach of a plea agreement unless the defendant meets her burden of proving prejudice. *See, e.g.*, *Olvera*, 2012 S.D. 84, ¶ 14, 824 N.W.2d at 116; *Jones*, 2012 S.D. 7, ¶ 17, 810 N.W.2d at 206.

[¶25.]	Guziak fails to establish prejudice under the third prong of plain error review.[4] She argues that her substantial rights were violated by the State's implied

---

4.	Contrary to our decisions in *Olvera* and *Jones*, the dissent improperly
	relieves Guziak of her burden to show prejudice because, in its view, the
	"facts make it impossible for Guziak to prove prejudice—ever." Dissent ¶ 35.
	The dissent's position would overrule *Olvera* and *Jones*. Further, the
	dissent's position is untenable under the decision of the Supreme Court of the
	United States in *Puckett*. In *Puckett*, the Court explained that a defendant
	who procedurally forfeits an error arising from the government's breach of a
	plea agreement must show prejudice because this error does not amount to
	"structural error." 556 U.S. at 141, 129 S. Ct. at 1432 (distinguishing
	(continued . . .)

breach, but she fails to show, or even argue, that the circuit court imposed a harsher sentence or that she would have received a suspended sentence absent the State's argument. "[T]he defendant whose plea agreement has been broken by the Government will not always be able to show prejudice . . . because he likely would not have obtained those benefits in any event[.]" *Olvera*, 2012 S.D. 84, ¶ 13, 824 N.W.2d at 116 (quoting *Puckett*, 556 U.S. at 141–42, 129 S. Ct. at 1432–33). Guziak's conclusory argument is insufficient to meet her burden under plain error review.

[¶26.] Further, the record does not support a claim that any of the State's comments had an impact on the circuit court's sentence. The court informed the parties prior to sentencing that it would not be bound by the terms of the plea agreement and wanted to leave open the potential to impose a prison sentence. In its sentence colloquy, the court thoroughly discussed the aggravating factors it found in the PSI without referring to the State's specific comments. The court highlighted Guziak's substance abuse issues, her refusal to take prescribed mental health medications and to take responsibility for herself, and that Guziak had lied in her PSI interview by stating that she was sober for five years. The court particularly focused on the severe abuse and neglect that had occurred to an

---

(. . . continued)

objected to plea agreement breaches as recognized in *Santobello v. New York*, 404 U.S. 257, 261–62, 92 S. Ct. 495, 498–99, 30 L. Ed. 2d 427 (1971)). The *Puckett* Court recognized the necessity of establishing trust between a defendant and prosecutors in the plea-bargaining process but explained that "the rule of contemporaneous objection is equally essential and desirable, and when the two collide [the Court saw] no need to relieve the defendant of his usual burden of showing prejudice." *Id.*

"eleven-week-old baby totally and wholly dependent on [Guziak] as [her] child," as well as Guziak's admission that she knew the father was being too rough with J.J. The court concluded its comments by stating, "This is not a type of case that warrants a probation sentence." The court explained to Guziak, "Because of the work that you have done in the last 15 months, that's a reason why you're not going to prison for 10 years just like [the co-defendant]."[5] These statements by the court do not demonstrate the outcome would have been different or that it imposed a harsher sentence because of the State's sentencing argument. As such, Guziak's argument fails, and we do not need to address the issue whether the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.[6]

[¶27.]    We affirm.

[¶28.]    KERN, SALTER, and DEVANEY, Justices, concur.

[¶29.]    MYREN, Justice, dissents.


MYREN, Justice (dissenting).

[¶30.]    The State and Guziak reached a plea agreement. Guziak promised to plead guilty to two felonies. The State agreed to recommend a suspended execution of sentence and cap its request for incarceration at 180 days in county jail. "Like all

---

5.    J.J.'s father was sentenced a week earlier by the circuit court for J.J.'s injuries. He received a thirty-year prison sentence with twenty years suspended.

6.    The dissent fails to address how Guziak has met the fourth and final prong of plain error review. We emphasize that the fourth prong is "meant to be applied on a case-specific and fact-intensive basis[.]" *Puckett*, 556 U.S. at 142, 129 S. Ct. at 1433 (noting that, contrary to the defendant's claim, not every breach of a plea agreement will constitute a miscarriage of justice).

contracts, [plea agreements] include[] an implied obligation of good faith and fair dealing." *Erickson v. Weber*, 2008 S.D. 30, ¶ 27, 748 N.W.2d 739, 746 (quoting *Vanden Hoek v. Weber*, 2006 S.D. 102, ¶ 14, 724 N.W.2d 858, 862). Guziak did exactly what she promised in the plea agreement. The State intentionally did not fulfill its part of the plea bargain. "When the government fails to fulfill a material term of a plea agreement, the defendant may seek specific performance or may seek to withdraw his plea." *State v. Bracht*, 1997 S.D. 136, ¶ 6, 573 N.W.2d 176, 178 (quoting *United States v. Barrasse*, 115 F.3d 610, 612 (8th Cir. 1997)). The majority opinion says this Court may not remedy such an obvious breach of contract because Guziak's attorney did not object at the moment that breach occurred. I dissent.

[¶31.] The circuit court informed the parties that it would not be bound by the sentencing recommendation of the plea agreement and appropriately offered Guziak the opportunity to withdraw her plea. This was all consistent with the court's prerogatives and obligations set forth in our statutory and decisional law. Guziak elected to continue with the plea agreement and persist in her guilty plea. Thus, the plea agreement remained in place. All that remained was for the State to do what it promised—recommend a suspended execution of sentence with a cap of 180 days in county jail. Although the circuit court was under no obligation to accept this recommendation, this in no way diminished the State's obligation to fulfill the promise it had made. Instead, the State made a winking recommendation for a suspended sentence accompanied by an extensive argument justifying the opposite. The State noted that Guziak's history was "egregious and warranting a hefty sentence." The State engaged in a lengthy discussion of her "long, long, long

criminal history[,]" which was clearly intended to encourage a sentence other than the one the State had promised to recommend. Any impartial observer is obliged to recognize that the State's conduct was, at the very least, an implicit violation of the plea agreement. Yet, as the majority opinion notes, Guziak's counsel did not object. Had a timely objection been made, our decisional law identifies the appropriate remedy to be a remand for resentencing before a different judge. *See State v. Morrison*, 2008 S.D. 116, ¶ 5, 759 N.W.2d 118, 120 (stating that the remedy for the State's breach of a plea agreement was resentencing with a new judge); *State v. Slotsky*, 2016 S.D. 54, ¶ 10, 883 N.W.2d 738, 741 ("[I]n a case where the relief involves specific performance of a plea agreement, the remedy is resentencing before a different judge.").

[¶32.] Because Guziak's counsel did not object, this Court is compelled to resort to a "plain error" analysis. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." SDCL 23A-44-15. Before the enactment of that statute, this Court did not recognize a "plain error" theory. *See State v. Barr*, 89 S.D. 280, 285, 232 N.W.2d 257, 260. We first applied the "legislatively created plain error rule" in *State v. Brammer*, where we noted that "[t]o recognize the rule, however, is not to say that every error that occurs at trial rises to the level of plain error, for the plain error rule must be applied cautiously and only in exceptional circumstances." 304 N.W.2d 111, 114 (S.D. 1981) (citations omitted). We applied the "plain error" rule on an ad hoc basis in numerous cases from 1981 through 1998 without invoking any framework to guide our analysis. That changed with *State v. Nelson*, 1998 S.D. 124, 587 N.W.2d

439, where we adopted the four-factor analysis outlined in *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997) (citations omitted). In *Nelson*, we declared that: "Plain error requires (1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443 (citation omitted). We also noted that "unlike harmless error review [] in which the State has the burden proving the error was not prejudicial, with plain error analysis the defendant bears the burden of showing the error was prejudicial." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 737–41, 113 S. Ct. 1770, 1779–81, 123 L. Ed. 2d 508 (1993), *aff'd in part*, *rev'd in part*, 62 F.3d 1180 (9th Cir. 1995), *cert. denied*, 519 U.S. 931, 117 S. Ct. 303, 136 L. Ed. 2d 221 (1996)).

[¶33.] "Deviation from a legal rule is 'error' unless the rule has been waived." *Olano*, 507 U.S. at 732–33, 113 S. Ct. at 1777. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)). Both parties to a plea bargain agreement are bound to comply with their obligations under the agreement. Guziak did not waive the State's obligation to fulfill its contractual obligations. Thus, there was error. The court need not be implicated in the error—for as the *Olano* Court noted: "[a]lthough in theory it could be argued that '[i]f the question was not presented to the trial court no error was committed by the trial court, hence there is nothing to review,' this is not the theory that [the plain error rule] adopts." *Id.* at 733, 113 S. Ct. at 1777 (internal citation omitted). By their

very nature, plain error cases frequently involve circumstances where the trial court was not called upon to address the issue at hand.

[¶34.] "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *Id.* (citing *United States v. Young*, 470 U.S. 1, 16 n.14, 105 S. Ct. 1038, 1047 n.14, 84 L. Ed. 2d 1 (1985); *United States v. Frady*, 456 U.S. 152, 163, 102 S. Ct. 1584, 1592, 71 L. Ed. 2d 816 (1982)). The rule of law requiring parties to meet their contractual obligations is clear. It is equally clear that the State's sentencing argument was not consistent with the obligations it had undertaken in the plea agreement. The majority opinion acknowledges the State's implicit breach of the duty of good faith and fair dealing. Still, it attempts to diminish the significance of that breach by arguing that the plea agreement did not explicitly prohibit the State from brazenly arguing for a harsher outcome after making a *pro forma* request consistent with the plea agreement. Such thin sauce is hardly in keeping with the goal of protecting the "fairness, integrity, or public reputation of judicial proceedings." *See Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443 (citation omitted). The unvarnished effect of the majority opinion is that the State can intentionally breach its contractual obligations and Guziak is left with no remedy despite having complied fully with her contractual obligations.

[¶35.] "Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of [the plain error rule]." *Olano*, 507 U.S. at 735, 113 S. Ct. at 1778. Although it found it unnecessary to address the issue, the *Olano* court noted, "[t]here may be a special category of forfeited errors that can be corrected regardless

of their effect on the outcome . . . ." *Id.* In my opinion, this case constitutes such a special category. The circuit court told the parties it would not be bound by the sentence recommendation made in the plea agreement. The circuit court appropriately offered Guziak the opportunity to withdraw her plea. Guziak elected to continue with the plea agreement. She was entitled to expect the State to honor its agreement. Although none of the parties knew what sentence the circuit court would impose, everyone knew the court intended to impose a harsher sentence than the one agreed to be recommended as part of the plea agreement. Even without the State's breach, the court was not going to impose the recommended sentence. These simple facts make it impossible for Guziak to prove prejudice—ever.[7] The circumstances also emboldened the State to breach the terms of the plea agreement. If Guziak's counsel had objected to the State's breach, the remedy under our

---

7.    In *Santobello v. New York*, the United States Supreme Court held that reversal and remand were warranted when a prosecutor's violation of a plea bargain was properly preserved by objection. 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). In *Puckett v. United States*, 556 U.S. 129, 141, 129 S. Ct. 1423, 1432, 173 L. Ed. 2d 266 (2009), the Court noted that *Santobello* was premised on "a policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an 'essential' and 'highly desirable' part of the criminal process." The *Puckett* Court went on to explain: "But the rule of contemporaneous objection is equally essential and desirable, and when the two collide we see no need to relieve the defendant of his usual burden of showing prejudice." *Id.* As the majority notes, the Puckett Court explained that a breach of a plea deal is not a "structural" error. However, I respectfully suggest that discussion was preamble rather than the basis for its holding. This Court is responsible to develop the shapes and contours of South Dakota's plain error rule. As noted at length in this dissent, the facts of this case are unique. They are not the facts presented to the *Puckett* Court. In my opinion, these unique facts, coupled with the importance of maintaining trust between defendants and prosecutors outweigh the rule of contemporaneous objection and justify a narrow exception to the prejudice prong.

decisional law would be a remand for resentencing before another judge.  Because no objection was made, the plain error rule is implicated.  The Legislature authorized the courts of this State to recognize plain errors affecting substantial rights even in the absence of an objection.  Over the course of forty years, we have created a framework of analysis as part of our decisional law to assist us in applying the plain error rule cautiously and only in exceptional circumstances.  The unique facts of this case present one special category of cases envisioned by the *Olano* court in which prejudice need not be shown, because such a showing is always impossible under the circumstances of the case.  I would invoke the plain error rule to excuse the absence of an objection and remand the case for resentencing before another judge.  That judge could impose any sentence he or she deems appropriate after the State makes the sentence recommendation it had promised to make.