#28501-a-SRJ
**2018 S.D. 79**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

ANTONIO D. LEDBETTER,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

DAVID A. STUART
Peterson, Stuart, Rumpca
   & Rasmussen, Prof. LLC                    Attorneys for defendant
Beresford, South Dakota                    and appellant.


MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
Assistant Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                    and appellee.

\* \* \* \*

ARGUED ON
OCTOBER 3, 2018
OPINION FILED **11/28/18**

#28501

JENSEN, Justice

[¶1.]     Antonio Ledbetter appeals from three consecutive fifteen-year sentences handed down by the circuit court after Ledbetter pleaded guilty to three counts of aggravated assault. Ledbetter claims that the circuit court erred by failing to follow the terms of a plea agreement that limited the maximum prison term on each count of aggravated assault to ten years. Because the plea agreement was not binding on the circuit court, we affirm the sentences.

**Facts and Procedural History**

[¶2.]     In the fall of 2016, Sara Inboden broke off a romantic relationship with Ledbetter. However, Inboden maintained contact with Ledbetter because she had become pregnant with his child.

[¶3.]     On October 11, 2016, Ledbetter insisted on visiting Inboden. Inboden hesitantly agreed. After arriving at Inboden's apartment, Ledbetter demanded to be involved in her evening plans. When Inboden refused, he punched her in the face. Ledbetter continued to strike Inboden and slammed her head onto the floor, knocking her unconscious. While unconscious, Ledbetter cut off Inboden's nipple on her right breast with a pair of scissors. After Inboden regained consciousness, Ledbetter attacked her again, cutting off the nipple on her left breast and choking her until she passed out a second time. Inboden regained consciousness and escaped the apartment. Inboden suffered multiple injuries from the attack and required reconstructive surgery to repair the disfiguring injuries to her breasts.

[¶4.]     Ledbetter was indicted on one count of aggravated kidnapping and eight counts of aggravated assault. The court appointed counsel to represent

-1-

Ledbetter and he pleaded not guilty to all charges. A jury trial was scheduled for January 31, 2017. After issues developed in the attorney-client relationship between Ledbetter and his court-appointed counsel, the circuit court appointed co-counsel to assist in Ledbetter's defense. The start of trial was delayed to August 29, 2017 on Ledbetter's motion.

[¶5.] On August 14, 2017, Ledbetter's counsel emailed the circuit court requesting an informal meeting to discuss a plea agreement negotiated between the parties. Defense counsel's stated purpose for the meeting was to determine if the plea agreement would be acceptable to the court. The meeting with the court took place the next day in chambers with the prosecuting attorney and defense counsel. The meeting occurred off the record, but Ledbetter claims that the terms of the plea agreement were explained and the court orally stated the plea agreement was acceptable. Following the meeting, Ledbetter's attorney drafted a written Petition to Plead Guilty and Statement of Factual Basis (Petition), which included the terms of the plea agreement. Ledbetter signed the Petition on August 16, 2017.

[¶6.] Two days later Ledbetter appeared at a change of plea hearing. The Petition was presented to the circuit court and described the plea agreement as follows:

> [Ledbetter] has accepted the terms of the plea agreement negotiated between his attorneys and the State. The terms of such plea agreement call for a plea of guilty to Counts [three], [six], and [eight] of the Indictment filed on October 17, 2016. In return for such pleas of guilty, the State has agreed to cap its argument for actual penitentiary time to [thirty] years. However, the State may request additional suspended prison time in addition to the [thirty] years actual. Lastly, Defense is not able to argue for any actual time less than [eighteen] years

> actual penitentiary. The State has a cap of [thirty] years and the Defense has a floor of [eighteen] years actual time.

[¶7.]     Nothing in the Petition stated that the circuit court had accepted or was bound by the terms of the plea agreement. Rather, Ledbetter acknowledged in paragraph 2(d) of the Petition that he understood,

> [i]f there are any agreements between the State and [Ledbetter], the [c]ourt is not bound to accept any such agreements as to sentencing. In other words, if there are such agreements, including recommendations as to sentencing, the [c]ourt can either accept or reject such agreements.

[¶8.]     The Petition also advised Ledbetter that the maximum sentence on each count of aggravated assault was fifteen years, that "the [c]ourt may run these counts concurrently or consecutively," and if the sentences were run consecutively, "the total imprisonment could total [forty-five] years." Ledbetter acknowledged his understanding in paragraph 2(f) of the Petition that: "[Ledbetter's] lawyers and [Ledbetter] also have discussed the maximum and minimum sentences that apply to his case. He acknowledges that his lawyers' predictions are not binding on the [c]ourt and that *the [c]ourt can give him any sentence up to the maximum sentence provided in the statute.*" (Emphasis added.) Finally, the Petition stipulated that "the Judge has not made any suggestion to [Ledbetter] as to what the actual sentence will be."

[¶9.]     At the plea hearing, Ledbetter and his defense counsel affirmed that counsel had reviewed the Petition with Ledbetter and that Ledbetter signed the Petition. Defense counsel also orally confirmed the terms of the plea agreement at the start of the plea hearing:

The plea agreement is a plea to three counts from the Indictment. It will be a plea to Count Three, Count Six and Count Eight. Each of those counts is a count of aggravated assault domestic. We provided the [c]ourt with a written petition to plead guilty as well as the statement of factual basis as laid out for those three counts. It also includes the plea agreement which is in return for those pleas, the State has agreed at the time of sentencing, that it will not ask for any actual jail time beyond [thirty] years, so it would be a cap of [thirty] years. The State is free to ask for additional suspended time, so as an example, could ask across those three counts for [forty-five] years with [fifteen] suspended. That would be within the terms of their agreement.

Likewise, on the defense side, we have an agreement where there is a floor on the plea agreement. We are not able to argue for anything less than [eighteen] years.

[¶10.] The circuit court explained to Ledbetter that if he pleaded guilty the "maximum penalty for each of those counts by statute is [fifteen] years in prison . . . ." The circuit court also explained that the court could impose the sentences consecutively. Before accepting the pleas of guilty, the court asked Ledbetter whether he had been "promised anything other than the plea agreement which is set forth in the written petition that has influenced your decision to plead guilty?" Ledbetter responded, "No, sir." The court then accepted Ledbetter's guilty pleas to the three counts of aggravated assault and delayed sentencing to allow a presentence report to be completed.

[¶11.] At the November 28, 2017, sentencing hearing, Ledbetter and the State presented arguments requesting sentences consistent with the plea agreement. Following the parties' arguments, the court addressed the plea agreement stating, "the State would not ask the [c]ourt to impose more than [thirty] years actual in connection with the case" and "the defense would not ask the [c]ourt

to impose the sentence of less than [eighteen] years actual . . . but the plea agreement is not binding upon the [c]ourt in terms of whether or not the [c]ourt should sentence the defendant to more or less than the plea agreement." The court further explained that the plea agreement was binding upon the parties to restrict their arguments at sentencing. The court imposed the maximum sentence on each count of aggravated assault and ordered the terms to run consecutive, for a total sentence of forty-five years.

[¶12.] Ledbetter orally objected to the sentence, arguing his plea was conditioned on the bargained-for sentencing cap of thirty years. Further, Ledbetter pointed out that the court had never indicated dissatisfaction with the terms of the agreement, and that Ledbetter should have been given an opportunity to withdraw his plea if the "sentence was going outside of the contemplated plea agreement." Based on those objections, Ledbetter asked the court to reconsider its sentence before the conclusion of the sentencing hearing.

[¶13.] The circuit court denied Ledbetter's oral request to modify its sentence, stating that the sentence complied with the plea agreement as set forth in the Petition. The court referred specifically to paragraph 2(f) of the Petition concluding that the plea agreement limited the parties' arguments but was not binding on the court.

[¶14.] The circuit court entered a written judgment and sentence on December 8, 2017. On January 3, 2018, Ledbetter filed a motion to reconsider sentence for the same reasons explained in the oral objection at sentencing. Defense counsel forwarded the motion to the circuit court by email. The motion

stated that the plea agreement was presented to the court at the informal meeting in chambers to see if the plea was acceptable to the court. Defense counsel stated his belief that the court had "given the thumbs up" to the agreement at the meeting. However, defense counsel's email also acknowledged that "this was not an agreed upon plea offer technically binding on the court." On January 5, 2018, the court denied the motion to reconsider.

[¶15.]     Ledbetter raises two issues on appeal:

    1.    Whether the circuit court was bound to the plea agreement.

    2.    Whether the circuit court erred by failing to enter a sentence consistent with the plea agreement.

**Analysis and Decision**

[¶16.]     Whether a circuit court is bound by the terms of a plea agreement is a question of law reviewed de novo. *State v. Hale*, 2018 S.D. 9, ¶ 11, 907 N.W.2d 56, 59.

[¶17.]     Ledbetter argues that the parties reached an agreed disposition for sentencing pursuant to SDCL 23A-7-8(3) that was binding on the circuit court. Ledbetter contends that after accepting his guilty plea, the circuit court was obligated to sentence him consistent with the plea agreement or permit him to withdraw his guilty plea under SDCL 23A-7-11. Ledbetter also asserts that the circuit court implicitly agreed to be bound by the caps in the plea agreement at the informal meeting with counsel. The State argues that the plea agreement bound the parties under SDCL 23A-7-8(2) to make certain recommendations at sentencing but such recommendations "shall not be binding upon the court." *See* SDCL 23A-7-

8(2). The State further contends that there is nothing in the record showing that the circuit court implicitly bound itself to the terms of the plea agreement.

[¶18.] SDCL 23A-7-8 permits the parties to negotiate and resolve pending criminal charges through the use of plea agreements. In exchange for a defendant's agreement to plead guilty to one or more criminal offenses, the prosecuting attorney may agree to do any one or more of the following:

> (1) Move for dismissal of other charges or not file additional charges arising out of a different occurrence;
> (2) Make a recommendation, or agree to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court;
> (3) Agree that a specific sentence is the appropriate disposition of the case; or
> (4) Perform other specified acts to be made a part of the agreement.

SDCL 23A-7-8.

[¶19.] SDCL 23A-7-8 prohibits the circuit court from participating in plea negotiations and "generally circuit courts are not bound by plea agreements." *State v. Reaves*, 2008 S.D. 105, ¶ 4, 757 N.W.2d 580, 582. However, "if a trial court accepts a *binding plea agreement*, it is bound to honor its promise to sentence the defendant within the bounds of the agreement." *State v. Shumaker*, 2010 S.D. 95, ¶ 6, 792 N.W.2d 174, 175 (Emphasis added.) Once accepted by the court, plea agreements under subsection (3) are binding on the court and limit the court's sentencing discretion to the terms (i.e., caps) of the plea agreement. *Hale*, 2018 S.D. 9, ¶ 12, 907 N.W.2d at 60. However, the court may delay accepting or rejecting a plea agreement under subsection (3) until after the guilty plea is entered. *See* SDCL 23A-7-9. If the court elects to defer the decision to accept or

reject such a plea agreement, SDCL 23A-7-11 requires the defendant to be given an opportunity to withdraw the guilty plea before sentencing if the court rejects the terms of the agreed disposition. *See Schumaker*, 2010 S.D. 95, ¶ 6 n.1, 792 N.W.2d at 175 n.1 (explaining that SDCL 23A-7-11 only applies to subsection (3) plea agreements). Additionally, we have held that a circuit court may implicitly agree to the sentencing restrictions set forth in a plea agreement by indicating it is bound by the agreed sentencing caps before a guilty plea is entered. *Schumaker,* 2010 S.D. 95, ¶¶ 7-8, 792 N.W.2d at 176. The court is then obligated to impose sentence consistent with the terms of the agreement. *Id.*

[¶20.]     In contrast, plea agreements under subsection (2) do not bind the circuit court to impose a sentence consistent with the terms of a recommended sentence. *Hale*, 2018 S.D. 9, ¶ 12, 907 N.W.2d at 60. When a plea agreement is made under subsection (2), the circuit court's decision to sentence a defendant outside the terms of the recommended sentence is not a rejection of the plea agreement that permits a defendant to withdraw a guilty plea under SDCL 23A-7-11. *State v. Lee*, 1997 S.D. 26, ¶ 8, 560 N.W.2d 552, 554; *State v. Rich*, 305 N.W.2d 390, 393 (S.D. 1981). A circuit court can accept a plea agreement made under subsection (2) and not accept the sentencing recommendation if the record shows the defendant has been informed and understands that the court is not bound by the sentencing recommendation at the time the guilty plea is entered. *Lee*, 1997 S.D. 26, ¶ 8, 560 N.W.2d at 554.

[¶21.]     Here, the record demonstrates that the parties intended the plea agreement to be a recommendation for sentencing under subsection (2). The

language of the plea agreement only binds the parties to the recommended sentencing parameters. Further, the Petition presented to the circuit court expressly provided that the court was not bound by the parties' agreement and the court could impose any sentence up the statutory maximum on each count of aggravated assault. Defense counsel also acknowledged in his email to the court following sentencing that "this was not an agreed upon plea offer technically binding on the court."

[¶22.] Ledbetter was also fully informed that the plea agreement was a non-binding recommendation to the circuit court before entering his guilty pleas. Ledbetter acknowledged that the circuit court was not bound to accept the parties' recommendation for sentencing. Ledbetter further acknowledged his understanding that by pleading guilty "the [c]ourt can give [Ledbetter] any sentence up to the maximum sentence provided in the statute," explained to be up to forty-five years in the penitentiary on all three counts. The circuit court also orally advised Ledbetter before he entered his guilty pleas that he could be sentenced up to the statutory maximum of fifteen years on each count of aggravated assault and that the sentences could be imposed consecutively. Because the plea agreement was a recommendation for sentencing under subsection (2), the court was not required to sentence Ledbetter within the caps or to allow Ledbetter to withdraw his plea under SDCL 23A-7-11 before sentencing Ledbetter to a prison term exceeding the recommendation.

[¶23.] The record also fails to show that the circuit court implicitly agreed to be bound by the recommended caps at the informal meeting before the plea hearing.

To determine if the court implicitly agreed to be bound by a plea agreement, we look to the words used by the court during the proceeding. *See Hale*, 2018 S.D. 9, ¶ 16, 907 N.W.2d at 61 (looking to the context of the change of plea hearing since the court did not explicitly say if it was bound to the plea agreement); *Schumaker*, 2010 S.D. 95, ¶¶ 7-8, 792 N.W.2d at 176 (examining the court's statements to determine if the plea agreement was accepted). We will also consider the context of the proceeding to see if the court accepted the plea. *See Hale*, 2018 S.D. 9, ¶ 18, 907 N.W.2d at 61 (determining the trial court accepted the plea by saying on the record that it was accepting the plea and explaining the plea limited the court's sentencing discretion).

[¶24.] At the plea hearing, the court did not expressly or implicitly indicate that its sentencing discretion was hindered by the plea agreement. When the plea agreement was referenced by the court, it was only to make sure the parties reviewed and understood the contents of the agreement. Additionally, there was no effort to memorialize the informal discussions between the court and counsel about the plea agreement. "This Court has repeatedly instructed that the party claiming error carries the responsibility of ensuring an adequate record for review." *State v. Andrews*, 2007 S.D. 29, ¶ 9, 730 N.W.2d 416, 420. In the absence of an adequate record, "this Court presumes that the trial court acted properly" and "any claim of alleged error fails." *Id.*

[¶25.] Therefore, we hold the circuit court was not bound by the terms of the plea agreement between Ledbetter and the State. Because the agreement was not

#28501

binding on the circuit court, it is unnecessary to discuss whether the court's sentences were consistent with the terms of the plea agreement.

[¶26.]    The sentences passed by the circuit court are affirmed.

[¶27.]    GILBERTSON, Chief Justice, and KERN and SALTER, Justices, concur.