#30201-aff in pt & vacate-MES
**2024 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                  Plaintiff and Appellee,

v.

BRANDON D. SCOTT,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RACHEL R. RASMUSSEN
Judge

* * * *

MELISSA SOMMERS
ANGEL RUNNELS of
Resolute Law Firm, P.C.
Sioux Falls, South Dakota                   Attorneys for defendant
                                            and appellant.


MARTY J. JACKLEY
Attorney General

CHELSEA WENZEL
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                            and appellee.

* * * *

CONSIDERED ON BRIEFS
OCTOBER 3, 2023
OPINION FILED **05/15/24**

#30201

SALTER, Justice

[¶1.] The circuit court sentenced Brandon Scott to a prison term after he pled guilty to the Class 5 felony version of grand theft. Scott argues on appeal that he should have received a fully suspended prison sentence because the court lacked justification to depart from SDCL 22-6-11's presumptive sentence requirement. Scott also asserts several issues related to his guilty plea and his plea agreement with the State, including claims that the court failed to obtain an adequate factual basis to support his guilty plea and that the court was bound by the terms of the parties' plea agreement, which he argues the State violated by seeking a sentence that exceeded the agreed-upon "cap." We affirm in part, but because the court did not comply with SDCL 22-6-11, we vacate and remand for resentencing.

## Factual and Procedural Background

[¶2.] The sequence of events leading to Scott's arrest and conviction are not disputed and were related by the State as part of a factual basis statement during the change of plea hearing. At approximately 10:00 p.m. on July 31, 2021, Scott broke into the Fleet Farm store in Sioux Falls, damaged property, and then fled in a maroon minivan to the parking lot of an auto auction business located in Tea. Surveillance cameras recorded Scott waiting inside the minivan before he got out at approximately 2:00 a.m. on August 1 and stole a nearby Ford F-350 pickup.

[¶3.] Though the circumstances are not entirely clear from the record, it appears that the F-350 pickup was recovered a short time later in Sioux Falls. Scott was a suspect in the Fleet Farm burglary, and police officers soon connected him to both offenses. Officers reviewed the recorded parking lot surveillance

footage and ultimately used DNA to confirm Scott's identity as the person who stole the pickup.[1]

[¶4.] A Lincoln County grand jury returned an indictment charging Scott with one count of grand theft in violation of SDCL 22-30A-17(3) which classifies the offense as a Class 4 felony when the value of the stolen property "is more than five thousand dollars but less than or equal to one hundred thousand dollars." The State also filed a part II habitual offender information alleging Scott had ten prior felony convictions.[2]

[¶5.] Scott and the State reached a plea agreement under which Scott agreed to plead guilty to grand theft based on the theory that the stolen property "is more than two thousand five hundred dollars but less than or equal to five thousand dollars." SDCL 22-30A-17(2). As a result, the severity of the grand theft charge was reduced from a Class 4 felony to a Class 5 felony. Scott also agreed to admit to the prior convictions contained in the part II information. In addition to recharging Scott with a less serious variety of grand theft, the State agreed to recommend a four-year "cap" at sentencing.

[¶6.] The circuit court conducted a consolidated change of plea and sentencing hearing. The parties advised the court of the plea agreement at the

---

1. Though not included in the record, the State writes in its brief that police officers arrested Scott on August 2 for a variety of charges including possession of a different stolen vehicle, aggravated eluding, and false impersonation to deceive a law enforcement officer.

2. The part II information alleged two prior convictions for grand theft, two for aggravated eluding, one for failure to appear in a felony case, four for possession of a controlled substance, and one for possession of an alcoholic beverage/marijuana in the penitentiary.

outset, and Scott's counsel further advised the court of the terms, including a statement that "the State agreed to cap arguments at four years[.]" Both Scott and the State confirmed that Scott's counsel had accurately stated the plea agreement. The record does not indicate that the plea agreement purported to limit the court's sentencing discretion, and there is no indication that the court believed it was bound by the agreement.

[¶7.] The circuit court reviewed the new grand theft charge with Scott and the effect that the part II information had on the maximum penalty he faced:

> The court: In the complaint and information that were filed, it does now charge you with a Class 5 felony rather than a Class 4 felony. The maximum possible punishment on a Class 5 felony, then, is up to five years in prison and/or a $10,000 fine. However, you do have that part II information that you were previously advised on, so if you admit to that as well, sir, your maximum possibl[e] penalty by statute would be up to 15 years in prison and/or a $30,000 fine. Do you understand that?
>
> Scott: Yes.

[¶8.] Scott waived his right to a preliminary hearing on the new charge and confirmed his understanding that by pleading guilty, he would be waiving his right to a jury trial, his right to confront and cross-examine witnesses, his right to remain silent, and the presumption that he is innocent. The court canvassed Scott about the decision to plead guilty, which he confirmed was his own volitional decision, uncoerced, and not prompted by anything other than the plea agreement.

[¶9.] The State provided a narrative factual basis for the plea based upon the events outlined above. Defense counsel agreed that the State's factual basis statement supported the guilty plea, and Scott admitted to taking the F-350 pickup

without authorization.  After finding Scott's guilty plea to be knowing, intelligent, and supported by a factual basis, the circuit court accepted the plea and moved on to the issue of sentencing.[3]

[¶10.]	During the course of his sentencing remarks, Scott's counsel stated that "[t]he plea agreement in this case calls for the State to be capped at four years." He made a number of factual claims about Scott, including that he was on parole at the time he stole the F-350 pickup and had since been returned to prison.  Scott's counsel also told the circuit court that Scott had been a cooperative client and was seeking to make positive changes in his life.  Ultimately, Scott's counsel asked the court to impose a fully suspended prison sentence concurrent with the sentence Scott was currently serving, or, failing that, a concurrent prison term, which would not significantly impact his parole eligibility date.

[¶11.]	The State urged the court to impose the four-year penitentiary sentence, coupled with additional suspended time.  The State underscored Scott's extensive criminal history which extended throughout his adult life[4] and encompassed dangerous offenses that jeopardized his well-being and community safety.  The State justified its sentencing recommendation as both a means for Scott to continue his rehabilitation journey and as a punitive measure for his actions.

---

3.	There was no presentence investigation, and Scott waived his right to delay his sentencing.  *See* SDCL 23A-27-1 ("Sentences shall be imposed without unreasonable delay, but not within forty-eight hours after determination of guilt.").

4.	Scott was forty years old at the time of the sentencing.

Scott's counsel did not object to the State's argument or claim that it violated the terms of the plea agreement.

[¶12.]    In his statement to the circuit court, Scott attempted to mitigate the effect of his criminal history by noting that he had accepted responsibility in each of the cases listed in the part II information, stating, "If I'm guilty of it, [I] just plead to it." As to the offense before the circuit court, Scott agreed with the State's earlier statements and acknowledged his commitment to hold himself accountable by stating, "I know I broke the law and I'm not going to try and sit here and lie to you about it. . . . I'm just trying to hold myself accountable." Scott attributed his irrational decision-making to drug use, while also outlining his plan to refrain from self-medication upon his release from prison.

[¶13.]    Before pronouncing the sentence, the circuit court acknowledged its familiarity with Scott's background and emphasized the importance of individual responsibility for change. The court noted Scott's extensive history of felony convictions, spanning multiple years and counties, and highlighted the impact of these crimes. The court expressed optimism that a period of incarceration would serve as a deterrent against further poor decision-making.

[¶14.]    The circuit court ultimately imposed a six-year prison sentence with three years suspended. Despite the fact that Scott's Class 5 felony conviction qualified for a presumptive sentence under SDCL 22-6-11, neither the parties nor

the court mentioned it. The court ordered the sentence to be served concurrent with

the prison sentence Scott was currently serving.[5]

[¶15.] Scott appeals, asserting the following issues, which we restate as

follows:

1. Whether the circuit court committed plain error by not considering itself bound by the parties' plea agreement.

2. Whether the circuit court committed plain error when it determined Scott's guilty plea was supported by a factual basis.

3. Whether the circuit court erred when it imposed a prison sentence, rather than a fully suspended sentence, without considering a basis for departure under the presumptive sentencing provisions of SDCL 22-6-11.

4. Whether the circuit court committed plain error by not sua sponte finding the State breached the plea agreement by seeking a sentence that exceeded the four-year "cap."

## Analysis and Decision

### Binding plea agreements vs. non-binding plea agreements

[¶16.] Whether a plea agreement was binding on the circuit court is a

question of law, but where the issue is not preserved, we review a claim that the

circuit court overlooked a binding plea agreement under the plain error doctrine.

*State v. Guziak*, 2021 S.D. 68, ¶ 10, 968 N.W.2d 196, 200 (citing *State v. Jones*, 2012

S.D. 7, ¶ 7, 810 N.W.2d 202, 205). To establish plain error, Scott must show "(1)

error, (2) that is plain, (3) affecting substantial rights; and only then may [this

Court] exercise [its] discretion to notice the error if (4) it seriously affect[s] the

---

5. Before concluding the hearing, the court offered Scott and his counsel as well as the prosecutor the opportunity to raise any remaining questions, but nobody mentioned any.

fairness, integrity, or public reputation of judicial proceedings." *Id.* (third alteration in original) (quoting *Jones*, 2012 S.D. 7, ¶ 14, 810 N.W.2d at 206).

[¶17.]     Plea negotiations between the State and a criminal defendant are specifically contemplated by SDCL 23A-7-8 which authorizes a prosecutor to agree to do any of the following:

> (1) Move for dismissal of other charges or not file additional charges arising out of a different occurrence;
>
> (2) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court;
>
> (3) Agree that a specific sentence is the appropriate disposition of the case; or
>
> (4) Perform other specified acts to be made a part of the agreement.

[¶18.]     Courts are prohibited from participating in plea negotiations under the provisions of SDCL 23A-7-8, and "generally circuit courts are not bound by plea agreements." *State v. Ledbetter*, 2018 S.D. 79, ¶ 19, 920 N.W.2d 760, 764 (quoting *State v. Reaves*, 2008 S.D. 105, ¶ 7, 757 N.W.2d 580, 582). But a trial court may agree to be bound by the parties' plea agreement made pursuant to SDCL 23A-7-8(3). *State v. Shumaker*, 2010 S.D. 95, ¶ 6, 792 N.W.2d 174, 175 (citing *Reaves*, 2008 S.D. 105, ¶ 7, 757 N.W.2d at 582). If a court accepts a plea agreement in this way, it yields its sentencing discretion in favor of the parties' agreed-upon disposition or sentencing range. *State v. Hale*, 2018 S.D. 9, ¶ 11, 907 N.W.2d 56, 60 (citations omitted). In some instances, a court "may implicitly agree to the sentencing restrictions set forth in a plea agreement by indicating it is bound by the

agreed sentencing caps before a guilty plea is entered." *Ledbetter*, 2018 S.D. 79,

¶ 19, 920 N.W.2d at 765 (citing *Shumaker*, 2010 S.D. 95, ¶¶ 7–8, 792 N.W.2d at

176).

[¶19.]       A trial court "may delay accepting or rejecting a plea agreement under

subsection (3) until after the guilty plea is entered." *Id.* (citing SDCL 23A-7-9). But

if the court defers its decision and ultimately rejects the plea agreement by

indicating it is unwilling to be bound by it, the court must give the defendant an

opportunity to withdraw the guilty plea. SDCL 23A-7-11; *see also Ledbetter*, 2018

S.D. 79, ¶ 19, 920 N.W.2d at 765 (citing *Shumaker*, 2010 S.D. 95, ¶ 6 n.1, 792

N.W.2d at 175 n.1).

[¶20.]       Plea agreements under SDCL 23A-7-8(2) are different. They involve

only the prosecutor's agreement to provide a sentencing recommendation, and they

are not binding on the court. *Hale*, 2018 S.D. 9, ¶ 11, 907 N.W.2d at 59–60. When a

plea agreement is made under subsection (2), the circuit court's decision to sentence

a defendant outside the terms of the recommended sentence is not a rejection of the

plea agreement that permits a defendant to withdraw a guilty plea under SDCL

23A-7-11. *State v. Lee*, 1997 S.D. 26, ¶ 8, 560 N.W.2d 552, 554; *State v. Rich*, 305

N.W.2d 390, 393 (S.D. 1981); *see also Shumaker*, 2010 S.D. 95, ¶ 6 n.1, 792 N.W.2d

at 175 n.1 (explaining that SDCL 23A-7-11 only applies to subsection (3) plea

agreements). "A circuit court can accept a plea agreement made under subsection

(2) and not accept the sentencing recommendation if the record shows the defendant

has been informed and understands that the court is not bound by the sentencing

recommendation at the time the guilty plea is entered." *Ledbetter*, 2018 S.D. 79, ¶ 20, 920 N.W.2d at 765 (citing *Lee*, 1997 S.D. 26, ¶ 8, 560 N.W.2d at 554).

[¶21.] In this case, there was no effort to bind the circuit court, and the court did not indicate that it would be bound by the plea agreement, either expressly or implicitly. As to the former, the record simply does not contain any affirmative statement by the court that it was accepting the agreement or agreeing to be bound by it. To the contrary, the court advised Scott of the maximum statutory penalty he faced. Also, the State did not dismiss the part II information, and had the parties intended to bind the court to a four-year sentence, the part II information would be unnecessary because the unenhanced maximum punishment for a Class 5 felony is five years.

[¶22.] Nor is there any support for the claim that the court implicitly accepted the sentencing cap referenced in the plea agreement. In our cases involving implicit acceptance arguments, we have generally "examined the court's statements made during the change of plea hearing." *Hale*, 2018 S.D. 9, ¶ 16, 907 N.W.2d at 61 (discussing *Shumaker*, 2010 S.D. 95, ¶¶ 7–8, 792 N.W.2d at 176). Here, the court gave no indication that its sentence would conform to the plea agreement cap, *see id.* ¶ 17, or that the plea agreement "saved" or spared the defendant the risk of an unguided sentence, *see Shumaker*, 2010 S.D. 95, ¶ 7, 792 N.W.2d at 176, or anything else to suggest that the court considered itself bound by the parties' agreement to a four-year cap.

[¶23.] Scott further argues that his plea was not voluntary but only as a consequence of the interior claim that the plea agreement was binding upon the

circuit court.[6] Because Scott believes the plea agreement was binding, he contends that the court should have advised him of its sentencing limitation, and because it did not, his guilty plea was not knowing and voluntary. But the agreement was not binding upon the court, as we have held, and nothing in the record indicates that Scott believed it was, or that his sentence would be limited to four years in prison.

[¶24.] In fact, the circuit court told him that the maximum penalty was fifteen years in prison, given the impact of the part II information, which Scott acknowledged.[7] We conclude the circuit court did not commit any error, and we need not consider the remaining three elements of the plain error test.

***The sufficiency of the factual basis statement***

[¶25.] Because Scott did not raise this issue with the circuit court, we will review his challenge to the sufficiency of the factual basis statement for plain error. *See State v. Nelson*, 1998 S.D. 124, ¶ 7, 587 N.W.2d 439, 443 (stating this Court's inquiry is limited to plain error when no objection was made to the circuit court); *see also United States v. Christenson*, 653 F.3d 697, 699 (8th Cir. 2011) (stating that defendant's argument that the district court accepted his guilty plea without an adequate factual basis is reviewed under the plain error doctrine in the absence of a timely objection).

---

6. Scott identifies these as separate issues in his appellate submissions.

7. Scott does not otherwise argue that the guilty plea was not knowing or voluntary, and the record reflects that the circuit court appropriately advised Scott of the rights he was waiving and ascertained that his plea was voluntary. *See State v. Apple*, 2008 S.D. 120, ¶ 10, 759 N.W.2d 283, 287 (describing the guilty plea procedure that meets the requirements of due process).

[¶26.] Before accepting a guilty plea, the court must be "subjectively satisfied that a factual basis exists for the plea [as to each element of the offense.]" *State v. Roedder*, 2019 S.D. 9, ¶ 14, 923 N.W.2d 537, 542 (citation omitted); SDCL 23A-7-2 (Rule 11(a)); SDCL 23A-7-14 (Rule 11(f)). "[R]eading the indictment to the defendant coupled with his admission of the acts described in it is a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment [is] detailed and specific, and the admissions unequivocal." *Roedder*, 2019 S.D. 9, ¶ 14, 923 N.W.2d at 542 (first alteration in original) (quoting *State v. Olson*, 2012 S.D. 55, ¶ 42, 816 N.W.2d 830, 841).

[¶27.] The elements of grand theft as it was alleged here, other than the monetary value, include: "[a]ny person who takes, or exercises unauthorized control over, property of another, with intent to deprive that person of the property[.]" SDCL 22-30A-1. Deprive means "to take or to withhold property of another or to dispose of property of another so as to make it unlikely that the owner will receive it." SDCL 22-1-2(12). The superseding information here alleged Scott "did take and exercise unauthorized control over property of [the victim] with the intent to deprive [the victim] of it."

[¶28.] Scott argues that his statement to the circuit court, "I did not intend to keep the victim's vehicle and intended to bring it back," should render the factual basis inadequate to establish a guilty plea. Scott's argument, however, is based on a flawed legal premise—i.e., the intent to deprive an owner of property under the grand theft statute means to *permanently* deprive the owner of the property. To be guilty of grand theft, however, it was necessary only that Scott intended to "take or

withhold" the F-350 pickup from the owner or to "dispose of it so as to make it unlikely that the owner will receive it[.]" SDCL 22-1-2(12). The record supports this element.

[¶29.] Scott admitted to taking the vehicle without permission, knowing it was not his, and drove it to a different location, where it was ultimately discovered by law enforcement. The undisputed facts of this particular case make Scott's intent to deprive the owner of the vehicle self-evident. Indeed, there is no other justification that could account for what Scott himself acknowledges as theft. The fact that his actions were not rational or that he now claims he did not mean to permanently deprive the owner of the vehicle does not impact the sufficiency of the factual basis statement.

[¶30.] The circuit court did not err when it accepted the factual basis, and Scott's guilty plea was provident. Scott's counsel confirmed the accuracy and sufficiency of the factual basis statement, and Scott himself confirmed his guilt. Scott acted to take the F-350 pickup, which he knew was not his, without authority to use it to the exclusion of the owner.

### Compliance with SDCL 22-6-11

[¶31.] We have recently held that a defendant must object to a circuit court's failure to comply with the presumptive sentencing provisions of the statute. *State v. Feucht*, 2024 S.D. 16, ¶ 24, __ N.W.3d __. In the absence of such an objection, we held that the error was forfeited and subject to review under the plain error doctrine. *Id.* However, we decided to apply this holding of *Feucht* prospectively because our previous decisions had not adequately signaled the need to preserve a

claim of noncompliance with SDCL 22-6-11 through an objection before the circuit court. *Id.* ¶ 25.

[¶32.]     In this case, Scott did not preserve his SDCL 22-6-11 claim, but because his sentencing occurred before our decision in *Feucht*, Scott's argument is not subject to plain error review. *See Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 187, 110 S. Ct. 2323, 2335, 110 L. Ed. 2d 148 (1990) ("It is, of course, a fundamental tenet of our retroactivity doctrine that the prospective application of a new principle of law begins on the date of the decision announcing the principle."). We, therefore, review Scott's claim de novo.

[¶33.]     Under SDCL 22-6-11, a circuit court is required to sentence criminal defendants convicted of a Class 5 felony "to a term of probation" or "a fully suspended penitentiary sentence[.]"[8]  But a departure from this requirement is permissible "if the court finds aggravating circumstances exist that pose a significant risk to the public and require a departure from presumptive probation[.]" *Id.* "If a departure is made, the judge shall state on the record at the time of sentencing the aggravating circumstances and the same shall be stated in the dispositional order." *Id.*

[¶34.]     At Scott's sentencing hearing, neither the parties nor the circuit court identified Scott's Class 5 grand theft charge as one that qualified under the

---

8.    The provisions of SDCL 22-6-11 list certain offenses—not implicated here— that are not subject to this requirement.

presumptive sentence provisions of SDCL 22-6-11.[9]  And though the court elected to not impose a fully suspended prison sentence, it did not specifically identify aggravating factors on the record to justify a departure, and it did not list any aggravating factors in the judgment of conviction.  Consequently, there was no compliance with the statute, which constitutes error.

[¶35.]	We encountered a similar situation in *State v. Flowers*, where "the record suggest[ed] that the circuit court may have believed SDCL 22-6-11 did not apply[.]"  2016 S.D. 63, ¶ 11, 885 N.W.2d at 786.  Given the statutory noncompliance in *Flowers*, we vacated the sentence "and remand[ed] for resentencing in accordance with SDCL 22-6-11."  *Id.*  Under the circumstances, we are compelled to do so here as well.  Therefore, we vacate Scott's sentence and remand the case with instructions to the circuit court to resentence Scott, applying the provisions of SDCL 22-6-11.

### Breach of the plea agreement

[¶36.]	Scott is represented by different counsel on appeal and has alleged a breach of the plea agreement as an ineffective assistance of counsel claim—i.e., his trial counsel was ineffective for not objecting to the State's request for a prison sentence of four years with additional time suspended.  This procedural route may not be required because we have the ability to review the forfeited plea agreement claim directly under the plain error doctrine, but, regardless, addressing the issue is

---

9.	Scott's part II information only increased the statutory maximum sentence, not the grade of the offense.  *State v. Flowers*, 2016 S.D. 63, ¶ 7, 885 N.W.2d 783, 785 (citing *Rowley v. S.D. Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 10, 826 N.W.2d 360, 364).

unnecessary in view of the fact that we are vacating Scott's sentence and remanding the case for resentencing.[10]

## Conclusion

[¶37.] We hold that the circuit court did not err by considering itself not bound by the parties' plea agreement, nor did it err in finding there was a sufficient factual basis to support Scott's plea. However, we vacate Scott's sentence with instructions to the circuit court to apply the provisions of SDCL 22-6-11 during resentencing.

[¶38.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

10. We do note that the State's agreement limiting its sentencing recommendation to a four-year "cap" did not distinguish between actual and suspended prison time. Absent an indication from counsel to the court that the plea agreement cap related to actual and/or suspended prison time, we have indicated that "suspended time equals imprisonment time." *Reaves*, 2008 S.D. 105, ¶ 9, 757 N.W.2d at 583 (citing *State v. Bowers*, 498 N.W.2d 202, 206 (S.D. 1993)). At the resentencing hearing, it would be helpful for the parties to clarify their plea agreement.